IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## WESTERN DIVISION.

---

### JACKSON, APRIL TERM, 1902.

---

EDMONDSON *v.* BOARD OF EDUCATION.

(*Jackson.* May 5, 1902.)

1. BOARD OF EDUCATION. *Subject to legislative control.*

The Legislature can, without encountering constitutional objection, control or abolish a Board of Education chartered to hold the public school properties and manage the public schools of a city, and hence may enlarge its powers and increase its responsibilities. (*Post, pp. 559–556.*)

Case cited: Governor *v.* McEwen, 5 Hum., 240.

Edmondson *v.* Board of Education.

2. CONSTITUTIONAL LAW. *Statute not contrary to law of the land.*

A statute which authorizes children living outside, but within one-half mile of, the city limits to attend the public schools of the city free of tuition, does not deprive a Board of Education, chartered to hold the public school properties and manage the public schools of the city, of its property contrary to the law of the land in violation of the Constitution, especially where the schools under the jurisdiction of such Board draw their revenues from State and county as well as from the city. (*Post, pp. 560–562.*)

Constitution construed: Art. I, Sec. 8.

3. SAME. *Same.*

Nor does such statute fall within the inhibition of that clause of the Constitution which provides thut "no man's particular services shall be demanded or property taken . . . without just compensation being made therefor." (*Post, pp. 562, 563.*)

Constitution construed: Art. I, Sec. 21; Art. XI, Sec. 12.

4. SAME. *Class legislation.*

Nor is such statute class legislation that is forbidden by the Constitution. (*Post. pp. 565, 566.*)

Constitution construed: Art. XI, Sec. 8.

Case cited: State *v.* Maloney, *ante*, p. 82.

5. MUNICIPAL CORPORATION. *What is a corporation purpose.*

Nor is such statute obnoxious to the objection that it devotes funds of a municipal corporation to other than a corporate purpose. (*Post, pp. 563–565.*)

Cases cited: McCallie *v.* Chattanooga, 3 Head, 318; Adams *v.* Railroad Co., 2 Cold., 645; Shelby County *v.* Exposition Co., 96 Tenn., 653.

⸻

＊　FROM　SHELBY.

⸻

Appeal from the Chancery Court of Shelby County. F. H. HEISKELL, Ch.

T. F. KELLY and J. B. HEISKELL for Edmondson.

FINLAY & FINLAY for Board of Education.

BEARD, J. By Chapter 134, of the Acts of the Legislature of 1899, the territorial limits of the city of Memphis were greatly enlarged. This Act was approved January 25, 1899. Three days thereafter, to wit: on the 28th of January, the Legislature passed, and the Governor approved, an Act providing that for a term of five years thereafter children of common school age, and residing within one-half mile of the limits of the city, as extended, should have the right to attend, free of tuition, the public schools inside the city nearest to their respective places of residence. This is Ch. 59 of the published Acts of the session of 1899.

The present cause grows out of this legislation. The bill avers that the complainant lives, and has lived for a long period of time, about one-half mile from the school-house, situated at Rozelle Station, and within the same distance from the present boundary line of Memphis; that for years his children were accustomed to attend the public school taught in that building, as it was in his school district, and the nearest and most accessible school to them; that by the extension of the city limits, as provided in the first men-

tioned Act, this school-house fell within these limits, leaving complainant within the half mile limit covered by the one last referred to; that he has three children within the school age, and that, notwithstanding the legislative provision referred to above, the Board of Education of Memphis has refused his children admission into said school. A mandamus was, therefore, asked, requiring the Board to show cause why complainant's children should not be permitted to attend this school and enjoy all the privileges thereof.

The bill was demurred to upon various grounds. The demurrer having been overruled, the Chancellor granted an appeal to this Court. The errors assigned raise all objections made by the demurrant.

The insistence of the appellant is that the Act hereinbefore referred to as being Chapter 59 of the Acts of the General Assembly of 1899, is violative of several clauses of the State Constitution, and is, for that reason, void and inoperative.

The first objection is that, in violation of Sec. 8, of Art. I., its effect is to deprive the defendant corporation of its property contrary to the law of the land.

The Board of Education of the city of Memphis is a public corporation by an Act passed at the session of the Legislature of 1868-9, by which it was clothed with authority to manage

the city schools, and was vested with the title to all the public school property within the limits of the city.

It is evident this corporation was created for the convenience of the citizens of Memphis, upon the theory that the common schools of the city would be more judiciously managed by a local agency, selected by and responsible to these citizens, than in any other way. It is well settled that such a corporation is under the control of the Legislature, so that it may be abolished or its power may be enlarged or its responsibilities increased at any time by that body, without the danger of encountering constitutional difficulties. *Governor* v. *McEwen,* 5 Hum., 240.

Not only is this true, but the Board depends largely for the maintenance of its schools upon sources of income found outside the limits of the city of Memphis. Independent of the property and poll taxes levied by the city authorities for this purpose, it receives from the State its proper proportion of the moneys derived from the payment of interest on the common school fund held by it as trustee, as well as from the poll and property tax imposed and collected by the State for school purposes, and the poll tax and the tax on property levied and collected by the County of Shelby for the same purpose, its proportion of these funds being determined by the ratio, the scholastic population of Memphis in

24 P—36

the one case bears to the scholastic population of the State, and in the other to that of the balance of the county.

In view of the nature of the corporation and of the revenues upon which it largely depends for continued existence, we are not able to see that the Legislature, by the Act in question, deprived it of any property right in violation of "the law of the land," when it imposed upon it the duty of giving free admission to the children of families living within the half mile strip contiguous to and just outside the extended limits to the city schools nearest to the residence of their parents.

Nor is the objection that the Act violates Sec. 21 of Art. I. of the Constitution, any better taken. That section provides that "no man's particular services shall be demanded or property taken . . . without just compensation being made therefor."

This objection has been answered in what has been said above. The State, for the convenience of its citizens living within the territorial boundaries of Memphis, has created this local agency for the purpose of doing more conveniently and satisfactorily than could be done by a general agency, what the Constitution has imposed as a continuing duty upon "the General Assembly," that is, to cherish literature and science by "the support and encouragement of common schools

throughout the State" (Sec. 12, Art. XI.). To enable the Board best to accomplish this, the State has clothed it with certain powers which, at any time, as has been seen, it might enlarge, resume, or extinguish, and has supplied it from public sources a revenue ready to its hand. In no sense, then, can we understand that its "particular services" has been demanded or its "property taken" by this Act, so as to make it amenable to this clause of the Constitution.

Further, it is insisted this legislation violates Sec. 29 of Art. II. of the Constitution, in that its effect is to appropriate municipal funds to other than a corporate purpose. The argument is that the education of children living beyond the limits of the municipality, no matter how near to these limits, is not a corporate purpose, and that neither the Legislature nor the municipality can use corporate funds for that purpose.

Even if the city of Memphis alone furnished the funds for the maintenance of its public schools, it would not necessarily follow that there was a violation of the implied inhibition of this clause of the Constitution in granting, without pay, the privileges of these schools to children living just outside its limits, but located conveniently thereto. In the words of the Constitution, "Knowledge, learning, and virtue being essential to the preservation of republican institutions," it might very well be held that it was as con-

ducive to good order and public morals of the community of Memphis that the opportunities and advantages of education afforded by these municipal schools should be availed of by children just beyond as well as those within the municipal borders. For it has been held that there may be a corporate purpose, within the provision of this clause, though accomplished outside of local limits. Thus the building of a railroad near a city, when calculated to promote the interest of the city, was held such a purpose (*McCallie v. Chattanooga,* 3 Head, 318; *Adams* v. *Railroad Co.,* 2 Cold., 645), and in *Shelby County* v. *Exposition Co.,* 96 Tenn., 653, that an appropriation to defray the expense of an exhibition of the resources of the county at a point outside the limits of the county, was a county purpose. As was said in the last cited case, there is no exact rule by which the Courts may always determine what is a county or a corporation purpose, within the meaning of this provision of the Constitution. "The question must be decided upon the particular facts of each case."

But complainant is not forced by the stress of this case to that position. For how can it be maintained, in view of what has been said of the various sources from which the Board derives its income, that in the education of the children from this outside strip, which come into its schools, that there is a diversion of funds raised

by the city from taxes levied for school pur-
poses? How can the Court determine that funds
so derived are thus appropriated rather than
those furnished by the State and county? The
rule is that he who would invoke a constitu-
tional provision to avoid a statute must desig-
nate the provision, and we see no reason why
this Board, when it appeals to this clause of
the Constitution for protection against this Act,
should not be required to designate in which re-
spect it is violated. It should certainly be re-
quired to show that corporate funds raised by
local taxation were diverted to other than a
corporate purpose. There *is nothing on the face*
of the bill which will authorize such an infer-
ence.

Finally, it is said that this Act is vicious class
legislation, and void, because passed in violation
of Sec. 8, of Art. XI., of the Constitution.

In the case of *State* v. *Maloney, ante,* p. 82,
we had occasion to re-examine this clause of the
Constitution in connection with a statute which
it was invoked to defeat. It is unnecessary here
to repeat the argument of that case. It is
sufficient to say that it was there held that a
statute was not necessarily subject to this con-
stitutional objection, because the reason for its
passage did not appear upon its face; that "it
suffices if it is practical, and is not review-
able unless palpably arbitrary." This rule, alone,

would save the legislation here called in question. It certainly is practical in operation, and is not "palpably arbitrary."

But the statute, we think, in no sense can be characterized as capricious or unreasonable. Evidently the Legislature, realizing the great extension of the city's limits, as provided for by the Act passed a few days before, would likely throw into confusion the outlying school districts, and work inconvenience, if not loss, to the patrons of the public schools, where these patrons were left outside the new limits, and the schoolhouses, which they had contributed to erect and maintain, and to which they had been sending their children, might fall on the inside of the city limits by this Act, sought to reduce the loss and inconvenience for a limited period. In our opinion, it is altogether proper that this should have been done.

The judgment, overruling the demurrer, is affirmed.