R. W. HAGGARD *v.* J. W. GALLIEN.*

(*Nashville.* September Term, 1927.)

Opinion filed July 14, 1928.

1. **PUBLIC OFFICERS. · ABOLITION OF OFFICE FOR PUBLIC GOOD.**

No office holder may complain, if, in the public interest, and by way of putting into effect a new system the legislature repeals statutes, the effect of which is to abolish offices not protected by the Constitution. (Post, p. 270.)

Citing: Goetz v. Smith, 152 Tenn., 463; VanDyke v. Thompson, 136 Tenn., 136; Linkhouse v. Morris, 136 Tenn., 163; Smith v. Sells, 156 Tenn., 539.

2. **PUBLIC OFFICERS. ABOLITION OF OFFICE FOR PUBLIC GOOD. WHAT IS.**

An Act of the Legislature which changes (1) the name of the Board; (2) the number of its members, from seven to nine; (3) terms of office, from seven to two years; (4) the mode and measure of compensation; (5) the manner of selection,—from election or appointment by the County Court to election by the people, and from selection from the county at large, to election of one member from and a resident of each civil district of the county, is a materially new system of school government and is therefore constitutional. (Post, p. 271.)

Citing: Public Acts 1921, ch. 120; Private Acts 1927, ch. 629;
Distinguishing: Smith v. Sells, 156 Tenn., 539.

FROM WAYNE.

Appeal from the Chancery Court of Wayne County.—
Hon. J. C. Hobbs, Chancellor.

C. L. Boyd, for defendant, appellant.

R. R. Haggard, for complainant, appellee.

Mr. Justice Chambliss delivered the opinion of the
Court.

Members of the Board of Education of Wayne County,
holding office under Chapter 120 of the Public Acts of
1921, filed this bill challenging the constitutionality of
Chapter 629 of the Private Acts of 1927, which provides
for a new board for the administration of the schools of
the County, and seek a declaration judgment. While
other grounds are set up in the bill, we conceive the de-
terminative issue to be whether the act provides (1) for
a materially new system of school government, or (2)
for a change in form not real, but colorable only, with
its purpose merely the deposing of one set of officers and
substitution of others. This is the test. In the first
cases, "the rights of officers affected must give way to
what the legislature conceives to be the public interest,"
*House* v. *Creveling,* 147 Tenn., 589; *Smith* v. *Sells,* 156
Tenn. (3 Smith) 539, 5 S. W. (2nd) 660. In the second
case constitutional rights are invaded. The Chancellor
overruled demurrers to the bill and granted an appeal.

*(1)* It is now well settled that no "office holder may
complain, if, in the public interest, and by way of putting
into effect a new system, the legislature repeals stat-
utes, the effect of which is to abolish offices not pro-
tected by the Constitution." *Goetz* v. *Smith,* 152 Tenn.,

462, and to the same effect see *VanDyke* v. *Thompson*, 136 Tenn., 136, and *Linkhouse* v. *Morris*, 136 Tenn., 163.

Reliance is had for appellees, complainants below, on the recently decided case of *Smith* v. *Sells*, above cited, from Pickett County, in which this Court, finding the proposed changes colorable only and the manifest purpose of the act to be the removal of the holding officials, held the act unconstitutional and void.

*(2)* Analysis of the acts now before us disclose the following changes: (1) The name of the Board; (2) the number of its members, from seven to nine; (3) terms of office, from seven to two years; (4) the mode and measure of compensation; (5) the manner of selection,— from election or appointment by the County Court to election by the people, and from selection from the County at large, to election of one member from and a resident of each civil district of the County.

In the Pickett County case, *supra*, the only changes proposed were a reduction from seven to five in number, some minor modifications in the measure and mode of payment of compensation, certain requirements respecting the detail duties of the chairman and superintendent, and a provision for the taking of an oath of office. Quite rightly it was held that, "the system of government and control of the County schools is identical under each of the two statutes. The differences are confined to mere matters of detail, and cannot have the effect of changing the nature or identity of the office of members of the County Board of Education." Is this likewise true of the acts now under consideration? Conceding a practically controlling analogy to be applicable to changes (1), (2), (3) and (4) above noted, it can hardly be denied that the changes referred to under

paragraph (5) go further than any thing found in the Pickett County act, are not superficial merely, but affect the organic constitution of the Board, the form and structure of the governing body. Under every municipal charter, and its amendments, and under every form of government such as this created by the legislature, changes however radical which may be provided for from time to time by the legislature in the form of the Government contemplate the accomplishment of substantially the same administrative ends. Every municipal charter, in whatever form, has for its ultimate purpose the government of the given corporation. So every form of County Board of Education has, in substance, the same general governing duty to perform, the control of the public schools within its jurisdiction. It is not essential that the objects in view in the creation of the municipal, or other governing body, should be substantially changed, but that the changes proposed by a new measure shall not merely change the man in office, but shall substantially affect the form of the office. An apt illustration is afforded by the case of *VanDyke* v. *Thompson, supra.* The substantial change there made, as appears from an inspection of the charter of the City of Chattanooga, and the amendment thereto challenged in that litigation, was from an aldermanic to a commission form of government. Under the old form the several members of the Aldermanic governing Board were elected from the several wards of the City; under the new form provided by the amendment a governing Board composed of a reduced number was elected from the City at large, to terms of different length and different compensation. Other provisions related to details of administration. In the last analysis the objects to be attained, that is the administration of the government of the City of

Chattanooga, its schools, police and fire protection, public health, etc., were identical. The changes went only to the form of the governing body, and in substance, to the manner of its selection, whether from the several wards, or from the City at large. This Court was of opinion that the incidental removal from office of the complaining members of the old board was not an invasion of their constitutional rights.

In the instant case complainants below are members of a board elected, not by the people but by the County Court, and not chosen from or residing in particular civil districts, but from the County at large. It may well be conceived that the legislature found it advantageous and conducive to better and fairer results of administration to give to the people of the several civil districts the power to choose from each of their districts a resident representative on this important board, and to give to them the power to elect every two years their choice, rather than leave this choice to the possible log rolling proclivities of the County Court, with power to select men from the County at large, who might or might not be in touch with the conditions and requirements of certain of the districts.

We are unable to escape the conclusion that changes which affect not only the number of the members and the length of their terms of office, but go to the source of their authority and determine their residential qualification, are not colorable merely, but substantial. The basic structure of the governmental form is necessarily affected by a change in the manner of selection of the members of the governing body, such as a change from an appointive to an elective membership, or as here, from a membership chosen by a Court from a County at large,

to a membership elected by the people from the several districts. It is significant that Mr. Justice Green, in his opinion in *Goetz v. Smith, supra*, sustaining the constitutionality of the Knox County Highway Act of 1925, says: "Another difference not mentioned is that under the first act the Superintendent of roads was elected by the people for four years, while under the last act he is elected by the Board of Highway Commissioners, and holds office at the pleasure of such Board," thus recognizing the importance of a change in the mode of the selection, the source of the title of office holders.

It results that the demurrers must be sustained and the bill dismissed.