TOWNSEND *et al. v.* RAY *et al.*

(*Jackson*, April Term, 1939.)

Opinion filed July 1, 1939.

J. L. WHITE, W. V. TUCKER, and E. C. KENNEDY, all of Decaturville, and Ross & Ross, of Savannah, for appellants.

E. J. HARRIS, of Bolivar, and W. H. FISHER, of Memphis, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By the bill the complainants ask that the defendants be enjoined from acting as School Commissioners of Deca-

tur County upon the theory that the legislative acts under which they are functioning are invalid. The defendants demurred to the bill upon the ground that said acts are constitutional. The chancellor overruled the demurrer but granted defendants an appeal to this court.

By Chapter 181, Private Acts 1939, the Legislature abolished the County Board of Education of Decatur County. That Board consisted of seven members who were elected by the Quarterly County Court from the county at large, as provided by the general school law, Chapter 115, Public Acts 1925. Complainants were serving on said Board when it was abolished.

By Chapter 187, Private Acts 1939, the Legislature created a new Board of School Commissioners, consisting of one member from each of the twelve civil districts in the county, each member to be a resident of his district and to be elected by the legal voters of that district for a term of two years. The Act provides that one School Commissioner is to be elected by the qualified voters in each civil district of the county at the general election in August, 1940, and every two years thereafter.

The Legislature designated or named the twelve Commissioners, one from each civil district, who were to serve as the County Board of School Commissioners until their successors are chosen in the general election in August, 1940.

On the argument of this cause counsel abandoned all attacks on the Act except their insistence that the change in form for the administration of the schools of the county is not real but colorable, the purpose being the deposing of one set of officers and the substitution of others. Counsel conceded that the similarity of the situation presented in this cause and in that of *Haggard* v. *Gallien*,

157 Tenn., 269, 8 S. W. (2d), 364, 365, is striking, and that the decision in the latter cause is an authority against their contention. In the opinion in that cause it was said:

"In the instant case complainants below are members of a board elected, not by the people, but by the county court, and not chosen from or residing in particular civil districts, but from the county at large. It may well be conceived that the Legislature found it advantageous and conducive to better and fairer results of administration to give to the people of the several civil districts the power to choose from each of their districts a resident representative on this important board, and to give to them the power to elect every two years their choice, rather than leave this choice to the possible log rolling proclivities of the county court, with power to select men from the county at large, who might or might not be in touch with the conditions and requirements of certain of the districts.

"We are unable to escape the conclusion that changes which affect not only the number of the members and the length of their terms of office, but go to the source of their authority and determine their residential qualification, are not colorable merely, but substantial. The basic structure of the governmental form is necessarily affected by a change in the manner of selection of the members of the governing body, such as a change from an appointive to an elective membership, or, as here, from a membership chosen by a court from a county at large, to a membership elected by the people from the several districts. It is significant that Mr. Justice GREEN, in his opinion in *Goetz v. Smith, supra* (152 Tenn., 451, 278 S. W., 417), sustaining the constitutionality of the Knox County Highway Act of 1925 . . . says, 'Another

difference not mentioned is that under the first act the superintendent of roads was elected by the people for four years, while under the last act he is elected by the board of highway commissioners, and holds office at the pleasure of such board,' thus recognizing the importance of a change in the mode of the selection, the source of the title of office holders.''

Counsel for complainants emphasize a distinction in the 1939 Act and that involved in *Haggard* v. *Gallien* in that in the former the Legislature designated the persons to fill the vacancies until the next general election, while in the latter it was provided that ten days after it was passed and approved the Election Commissioners of the county were directed to call an election for the purpose of choosing one District School Commissioner in each civil district to serve as members of the Board until the next general election. The argument is made that in the latter cause the Legislature demonstrated its good faith in changing the system of school management by permitting the qualified voters in the county to choose their school board, while under the provisions of the 1939 Act the Legislature, in naming the members of the board, manifested a disposition to control the school system of the State and was not acting in good faith. The test by which this contention must be measured was stated in *House* v. *Creveling*, 147 Tenn., 589, 250 S. W., 357, 362, and subsequently approved in *Smith* v. *Sells*, 156 Tenn., 539, 3 S. W. (2d), 660, and numerous unpublished opinions, as follows:

''. . . it is now settled law in Tennessee that the Legislature may adopt a new system of government for a municipal corporation or for such institutions or agencies of the state as are not protected by the Constitution,

and to this end the Legislature may abolish the old plan and the offices created for the administration of the old plan in whole or in part. The rights of officers thus affected must give way to what the Legislature conceives to be the public interest. This, of course, assumes the change in form of government to be real, and not colorable, for the purpose of putting one set of men out of office and another set in office.''

 Applying this test in *Haggard* v. *Gallien,* it was held that the change in the form of governing the school system was real; and upon this authority and that of *Holland* v. *Parker,* 159 Tenn., 306, 17 S. W. (2d), 926, in which it was held that an act is not unconstitutional as depriving one of an office if it provides for a substantial change in the manner of selection of the official, we are constrained to hold that the change in system in the 1939 Act is real. The fact that the vacancies were filled by the Legislature until the general election does not invalidate the Act.

 In *Goetz* v. *Smith,* 152 Tenn., 451, 278 S. W., 417, 421, the court was considering Chapter 343, Private Acts 1925, which created a Board of Five Road Commissioners for Knox County, and named the five individuals who were to compose said Board until the next general election. In holding that this feature of the Act did not violate Section 17, Article II, of the Constitution the court said:

''Notwithstanding this constitutional provision, it is perfectly well settled that—'The Legislature, upon creating a new county office or state office, may provide for the filling of such office by appointment until the next general election.' '' (Citing numerous cases.)

Counsel insist that in the instant cause no new office was

created, and that the foregoing rule only applies where a new office is created. This is highly technical and is not supported by authority. The old County Board of Education was abolished and does not now exist. A new board, augmented in numbers, chosen in a different manner and for a different term, and one more representative in character, has succeeded it.

In *Goetz* v. *Smith, supra,* it was further said:

"If the superintendent of roads under the act of 1917 accepts appointment as superintendent of roads under the act of 1925, although the name is the same, he takes an entirely different office. The old office does not now exist."

In the instant cause the old board had been abolished and no longer existed. The fact that both boards performed substantially the same duties is not controlling. In *Goetz* v. *Smith,* the county superintendent was deprived of his office and a board of highway commissioners was created to perform the same duties theretofore performed by the superintendent. This court held, nevertheless, that the act created a new office.

With respect to the good faith of the Legislature in the passage of the 1939 Act, it is sufficient to say that courts, in determining the validity of a statute, cannot inquire into the conduct and motives attributable to members of the General Assembly. *Caldwell* v. *Lyon,* 168 Tenn., 607, 609, 80 S. W. (2d), 80, 100 A. L. R., 1152; *Peay* v. *Nolan,* 157 Tenn., 222, 7 S. W. (2d), 815, 60 A. L. R., 408; *State* v. *Lindsay,* 103 Tenn., 625, 53 S. W., 950.

The distinction which counsel attempt to draw between Chapter 120, Public Acts 1921, considered in *Haggard* v. *Gallien,* and Chapter 115, Public Acts 1925, under which complainants were elected by the County Court of De-

catur County to membership on the County Board of Education, in no wise affects the principles announced herein.

While much criticism is directed at the political motive responsible for this character of legislation, the courts are without authority or power to correct or reform this practice. Basically, it is founded upon the age-old philosophy that "to the victor belongs the spoils." Those who play the game of politics must rise or fall with their faction or party. The system may be wrong and result in removing efficient public servants and replacing them with those who are incompetent. The remedy for this so-called evil lies with the electorate and the Legislature and not with the courts.

Being of opinion that the involved 1939 Acts are valid, it results that the decree of the chancellor will be reversed, the demurrer of defendants sustained, and the bill dismissed.