TAYLOR *et al. v.* TAYLOR *et al.*

(*Jackson,* April Term, 1949.)

Opinion filed July 9, 1949.

Rehearing Denied August 10, 1949.

R. M. MURRAY, of Huntingdon, J. SAM JOHNSON, JR., of Huntingdon, G. C. CRIDER, of Huntingdon, HORACE OSMENT, of Nashville, and CHARLES L. CORNELIUS, of Nashville, for appellants.

W. H. LASSITER and J. Ross McKINNEY, both of Huntingdon, for appellees.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The Chancellor held valid Chapter 169 of the Private Acts of 1949, creating a County Board of School Commissioners to replace the County Board of Education of Carroll County, which has been functioning in said County since the enactment of Chapter 115 of the Public Acts of 1925, now codified in Williams' Code, Section 2317 et seq. The principle attack made on said Chapter 169 of the Private Acts of 1949, is that it is unconstitutional in that it violates Article 11, Section 17, of the Constitution of Tennessee, which provides: "No county office created by the Legislature shall be filled otherwise than by the people or the County Court."

Chapter 169 of the Private Acts in question provides that the Members of the new County Board of School Commissioners shall be elected by the qualified voters of the respective School Districts set out in said Act, and shall be composed of one Member from each School District in such counties as are set forth in Section 2 of the Act, while under the old Act the Members of the County Board of Education were elected by the County Court.

This identical question was before this Court in *Townsend v. Ray*, 174 Tenn. 634, 637, 130 S. W. (2d) 96, 97, where it was held that the change there made was not colorable but substantial. In that case this Court quoted and approved the language used in *Haggard v. Gallien*, 157 Tenn. 269, 8 S. W. (2d) 364, as follows:

"In the instant case complainants below are members of a board elected, not by the people, but by the county court, and not chosen from or residing in particular civil districts, but from the county at large. It may well be conceived that the Legislature found it advantageous and conducive to better and fairer results of administration to give to the people of the several civil districts the power to choose from each of their districts a resident representative on this important board, and to give to them the power to elect every two years their choice, rather than leave this choice to the possible log rolling proclivities of the county court, with power to select men from the county at large, who might or might not be in touch with the conditions and requirements of certain of the districts.

"We are unable to escape the conclusion that changes which affect not only the number of the members and the length of their terms of office, but go to the source of their authority and determine their residential qualifications, are not colorable merely, but substantial. The basic structure of the governmental form is necessarily affected by a change in the manner of selection of the governing body, such as a change from an appointive to an elective membership, or, as here, from a membership chosen by a court from a county at large, to a membership elected by the people from the several districts."

In *Townsend* v. *Ray, supra,* and *Haggard* v. *Gallien, supra,* this Court expressly upheld as constitutional the election of the several School Board Members by the voters of their respective Districts.

Appellants contend their position is justified by the holding of this Court in *Southern* v. *Beeler,* Atty. Gen., 183 Tenn. 272, 195 S. W. (2d) 857. That case is not in

point here, as the fatal part of the Act under consideration there was that the voters of the City of Knoxville were completely disfranchised.

Appellants rely on the rule laid down in *Gallien* v. *Miller,* 170 Tenn. 93, 92 S. W. (2d) 403. There the Court had under consideration Chapter 831, Section 8, Private Acts of 1935, applicable to Wayne County alone, fixing the qualifications of the county superintendent by requiring high school teaching experience of at least 40 school months, whereas the general law required 24 school months. The Court held said Act invalid, as it, in effect, "suspends a general law for the benefit of a particular county, and violates the rule against arbitrary selection for purposes of partial legislation. Section 8 of the act is violative of article 1, Section 8, and article 11, Section 8, of the Constitution." 170 Tenn. at page 97, 92 S. W. (2d) at page 404. See *Berry* v. *Hayes,* 160 Tenn. 577, 28 S. W. (2d) 50; *Harbert* v. *Mabry,* 166 Tenn. 290, 61 S. W. (2d) 652.

Later, in *Gilliam* v. *Adams et al.,* 180 Tenn. 74, 79, 171 S. W. (2d) 813, 814, this Court said: "There can be no doubt that education is a governmental function. *Quinn* v. *Hester,* 135 Tenn. 373, 186 S. W. 459. In exercising this function the county acts in a governmental capacity. There is a distinction, however, between legislation designed to affect the governmental agency as such and legislation designed primarily to affect the employees or citizens of such governmental agency as individuals. *State ex rel.* [*Bales*] v. *Hamilton County,* 170 Tenn. 371, 95 S. W. (2d) 618."

The cases of *Gallien* v. *Miller, supra,* and *Gilliam* v. *Adams et al., supra,* affected the general legislative poli-

cy to the extent that the acts in question amounted to a suspension of the general law for the benefit of a class.

In the instant cause, the Private Act in question changes the general law as to the method of election by the people, instead of by the County Court, and does not interfere with the operation of the general statutes applicable to all counties in the State. So far as affecting the general school statutes, it is immaterial whether the Members of the Board of Education are elected by the County Court or by the people. When the Members of the Board are elected by the people, the same duties and responsibilities are upon them as if they were elected by the County Court. As stated in *Townsend* v. *Ray, supra,* it might well be conceived that the election of the Board Members by the people would bring about an improvement in conditions, and give the people the right to select their Board Members from the respective School Districts of the County.

All assignments of error are overruled and the decree of the Chancellor is affirmed

All concur.