**Roscoe L. STRICKLAND, Jr., et al.**
v.
**T. P. BURNS et al.**
**Civ. A. No. 4010.**

United States District Court
M. D. Tennessee,
Nashville Division.

July 1, 1966.

Thomas Wardlaw Steele, Gullett, Steele & Sanford, Nashville, Tenn., for plaintiffs.

William T. Sellers, Murfreesboro, Tenn., Edwin F. Hunt, Reber F. Boult, Jr., Boult, Hunt, Cummings & Conners, Nashville, Tenn., for defendants.

Before HARRY PHILLIPS,* Circuit Judge, and WILLIAM E. MILLER and FRANK GRAY, Jr., District Judges.

* Sitting as District Judge by designation.

## OPINION

GRAY, District Judge.

This action was instituted by plaintiffs for a declaratory judgment that the provisions of Chapter 426 of the Private Acts of Tennessee, 1943, as amended, pertaining to the apportionment of the Rutherford County School Commission, violate rights secured to them by the Fourteenth Amendment of the Constitution of the United States and are, therefore, void. Injunctive relief was also sought.[1]

The parties entered into a stipulation with thirteen numbered paragraphs. It, together with exhibits, is attached as an Appendix, and references to it hereinafter are to the numbered paragraphs.

The Act in question provides that the School Commission be composed of eleven members, one commissioner being elected from each of the eleven school zones created by the Act. Each commissioner has one vote on the business transacted by the Commission. (Stipulation 4.) The Commission's powers include, *inter alia*, the hiring of teachers and other school employees, regulation of pupil transportation, the approval of an annual school budget and the purchase of supplies and equipment. The Commission has no tax-levying powers. (Stipulation 9.)

The school zones are unequally populated. The Fifth School Zone,[2] of which the plaintiffs are residents and qualified voters, contains at least one-third of the county's total population and is from three to fifteen times more populous than the other zones. (Stipulation 5 and 6.)

Plaintiffs contend that this wide disparity between the population of their zone and that of the other zones dilutes the efficacy of their votes and deprives them of equal representation on the Commission. Defendants acknowledge the disparity but assert that the Equal Protection Clause of the Fourteenth Amendment does not require that local representative government, or at least a local representative governmental body which is primarily administrative rather than legislative in character, conform to the "one man, one vote" standard of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d

---

1. A three-judge court was designated, pursuant to 28 U.S.C. §§ 2281 and 2284, to hear and determine the issues herein. Upon convening, however, the court determined that it was without jurisdiction as a statutory three-judge court because the statute under attack applies only to Rutherford County, Tennessee. Ex parte The Public National Bank of New York, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202; Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990; Ellis v. Mayor & City Council of Baltimore, 234 F.Supp. 945 (D.C.Md.); Johnson v. Genesee County, Michigan, 232 F.Supp. 563 (E.D. Mich.). Accordingly, the action was remanded to the District Court. Because of its importance the judges of this court invited the Honorable Harry Phillips, Circuit Judge, a member of the statutory three-judge court, to sit with them, and he was subsequently designated to sit as a district judge with the judges of this court in hearing this action.

2. The Fifth School Zone, in which all plaintiffs reside, contains most, but not all, of the city of Murfreesboro. It also includes an area outside the city. The city of Murfreesboro maintains a separate system of elementary schools. The Rutherford County School Commission, however, operates all of the high schools in the county, including those in the city of Murfreesboro, and also operates two elementary schools in the Fifth School Zone, one of which, designated as "Campus School," is operated at Middle Tennessee State University in Murfreesboro under an agreement between the County School Commission and the Tennessee State Board of Education. (Stipulation 1 and 11.) There is no indication that the malapportionment of the Commission reflects, or was legislatively intended to reflect, considerations arising from this situation. Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609. Cf. Glisson v. Mayor and Councilmen of Savannah Beach, 346 F.2d 135 (5th Cir. 1965).

620; Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed. 2d 632.[3]

In *Reynolds* and the related cases, the Supreme Court held that the fundamental principle of representative government in this country is one of equal representation for equal numbers of people and that any system of apportionment by which the weight of a citizen's vote is diluted when compared with the votes of citizens living in other areas is violative of rights secured by the Equal Protection Clause. *Reynolds* was decided in the context of state legislative apportionment and, as defendants assert, the Court emphasized the fact that state legislatures are, historically, the fountainhead of representative government in this country. Nevertheless, the rationale of the *Reynolds* decision, that is, that it constitutes invidious discrimination to dilute the efficacy of votes because of the residence of the voters, is logically as applicable to the backwaters of representative government at the local level as to the fountainhead of representative government at the state level.

A review of the decisions, since *Reynolds,* wherein the courts have considered questions of apportionment of local governmental bodies, indicates that a substantial majority of the courts have arrived at this same conclusion.

In Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (1965), the Fourth Circuit, speaking through Judge Sobeloff, held that "the 'one man, one vote' principle, * * * logically applies to councilmanic no less than to statewide apportionment."

In Bianchi v. Griffing, 238 F.Supp. 997 (E.D.N.Y.1965), the court held that a county board of supervisors must be representative of the voters of the county "as the Supreme Court has indicated is required of legislative bodies under

the Equal Protection Clause" (at p. 1004).

In Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D.Pa.1965), the court held void a plan of representation of elected school directors as in violation of the Equal Protection Clause, saying: "Nor do we believe that the status of a local school district, being an arm or agency of the state legislature to administer its educational system makes it immune from the constitutional requirement." (at p. 34)

To the contrary was the decision in Johnson v. Genesee County, Michigan, 232 F.Supp. 567 (E.D.Mich.1964), rendered three days after the decision in *Reynolds.* In that case, the court held that the composition of local units of government was a state matter, and that the court was not free to consider the subject of the apportionment of representation on local legislative bodies. The court relied upon the fact that the Supreme Court had not specifically overruled Tedesco v. Board of Supervisors of Elections, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1950), wherein an appeal of a Louisiana state court case was dismissed in a per curiam decision "for want of a substantial federal question." That case involved the apportionment of seats on a city council according to wards which were unequal in population. Although this court cannot say with certainty that *Tedesco* was "not brought under the Equal Protection Clause," as was said by the court in *Delozier,* supra, (247 F.Supp. at page 33) it does seem certain that the state court decision appealed to the Supreme Court did not specifically consider the possible application of the Equal Protection Clause. Tedesco v. Board of Supervisors of Elections [La. App.], 43 So.2d 514.

A similar result was reached by the majority in Moody v. Flowers, 256 F.

---

3. Perhaps Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), and Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964) should be included

as "one man, one vote" decisions. It would seem, however, that the principle ripened into a "basic constitutional standard" (Reynolds, 377 U.S. at page 568, 84 S.Ct. 1362) with the decisions of June 15, 1964, in the cases cited in the text.

Supp. 195, (M.D.Ala.), rendered June 10, 1966.

Lynch v. Torquato, 343 F.2d 370 (3rd Cir. 1965), is not considered apposite. In that case the Court of Appeals for the Third Circuit held that the Equal Protection Clause did not cover the internal workings of a political party's county organization. It, affirmed the "citizen's constitutional right to equality as an elector, as declared in the relevant Supreme Court decisions" but held that such right "applies to the choice of those who shall be his elected representatives in the conduct of government, not in the internal management of a political party." (at p. 372)

The plaintiffs herein have established that their individual votes in electing members of the Rutherford County School Commission have been substantially diluted by the provisions of the Act complained of. They have established that the only basis for such dilution is their place of residence. No showing has been made by defendants that would justify the discrimination.

■ We hold, therefore, that the discrimination existing is invidious. Since we can find no basis for applying the "one man, one vote" rule to the congeries of powers possessed by the Legislature itself and at the same time denying its application to a subordinate body simply because it possesses a fractional part of those powers, so long at least as the fractional part cannot be said to be insignificant or unimportant, we must also hold that the apportionment provisions of the Act complained of are void as violative of rights secured by the Equal Protection Clause of the Fourteenth Amendment.

■■ The provision of proper relief to implement this decision has given this court much concern. We believe that the formulation of a constitutionally acceptable method of selecting a board to administer the schools of the county is more properly a legislative function than a judicial one. The next General Assembly of the State of Tennessee will be a validly apportioned body for the first time in

many years. Baker v. Carr, 247 F.Supp. 629 (M.D.Tenn.1965). The significance of this, however, is materially diminished by the fact that the defeat or passage of local legislation, such as the Act in question or any amendment or repeal thereof, is determined, under practices of the General Assembly, by the will of the local representative, or representatives, in the House and Senate, with rare exceptions. (Stipulation 12.)

Nevertheless, injunctive relief will not be ordered at this time. If a constitutionally permissible scheme is not enacted into law by the General Assembly of Tennessee in its regular session in 1967, the court will entertain further application for relief. Pending adjournment of such session, this court will retain jurisdiction of this action.

Counsel will submit an appropriate order within ten (10) days.

### APPENDIX

#### STIPULATION

The plaintiffs and the defendants, as evidenced by the signatures of their respective attorneys of record affixed hereto, hereby stipulate that the following facts are true and may be considered by the Court as proven and as uncontroverted evidence in the trial of this cause without the necessity of calling any witnesses to prove or establish the same:

1. Plaintiffs are each and all citizens of the United States of America and of the State of Tennessee and are all qualified voters and taxpayers of Rutherford County, Tennessee, who are entitled to vote for members of the Rutherford County School Commission and other elective offices of Rutherford County, Tennessee. Plaintiffs are each and all residents of the Fifth School Zone, which comprises the 13th Civil District of Rutherford County, Tennessee, under the provisions of Chapter 426 of the Private Acts of Tennessee, 1943, as amended, and are qualified voters therein. Plaintiffs are either parents of school children attending the public schools of Rutherford

County, Tennessee, under the jurisdiction of the Rutherford County School Commission in the Fifth School Zone thereof, or parents of children who have a right to attend the same. Specifically, the following plaintiffs are parents of children who are attending the following schools under the jurisdiction of the defendant, Rutherford County School Commission:

Dr. and Mrs. Strickland – 1 Campus School, 1 Central High School, 1 pre-school
Mr. and Mrs. Dillingham – 1 Campus School, 1 Central High School
Mr. and Mrs. Coffey – 2 pre-school
Mr. and Mrs. Harvey – 2 Campus School, 1 Central High School
Mr. and Mrs. Hodges – 1 Central High School
Mr. and Mrs. Seddon – 2 Central High School
Dr. and Mrs. Howard – 1 pre-school

---

The following plaintiff is the parent of children attending schools under the jurisdiction of the city of Murfreesboro, Tennessee School System:

Mr. Qualls – 2 in city schools

Plaintiffs also have and exercise the right and interest which are common to all qualified voters of the Fifth School Zone, 13th Civil District, of Rutherford County, Tennessee, in the administration of the school program and school affairs of Rutherford County, Tennessee. Campus School, referred to in the above listing, is operated under an agreement between the Tennessee State Board of Education and the Rutherford County School Commission, a true copy of which, together with a letter of explanation, is attached hereto as Collective Exhibit No. 1 to this stipulation and made a part hereof. In actual practice, the Campus School is operated by the Middle Tennessee State University, with the University selecting the Teachers and submitting their names to the Rutherford County School Commission for election.

2. The defendants are all citizens of the United States of America, the State of Tennessee, and Rutherford County, Tennessee. The defendants Burns, Robert Taylor, Sanford, Johns, Sloan, Harris, Francis, Hoover, Campbell, Lane and Rush Taylor, Jr., are members of and comprise the Rutherford County School Commission of Rutherford County, Tennessee, created under Chapter 426 of the Private Acts of Tennessee, 1943. Since the filing of the complaint herein, the defendant, Rush Taylor, Jr., has replaced the defendant, T. P. Burns, as Chairman of the said Rutherford County School Commission. All of said defendants have been elected in prior elections to the office which they hold, and, in particular, said defendants respectively have been elected from the following school zones set opposite their respective names, together with an indication of the Civil Districts of Rutherford County, Tennessee, comprising said school zones under Chapter 426, Private Acts of Tennessee, 1943:

| Name | Zone | Civil District(s) Within Zone |
|---|---|---|
| T. P. Burns | 10 | 10, 11, 14 |
| Robert Taylor | 7 | 16, 17, 22 |
| John D. Sanford | 8 | 18, 19, 23 |
| Rufus Johns | 2 | 1, 6, 9 |
| Joe Sloan | 5 | 13 |
| J. T. Harris | 3 | 4, 7, 12 |
| Thurman Francis | 1 | 2, 3 |
| Thomas Hoover | 11 | 24, 25 |
| Jack Campbell | 9 | 20 |
| Floyd Lane | 6 | 5, 15, 21 |
| Rush Taylor, Jr. | 4 | 8 |

3. Since the filing of the complaint herein, the defendant Jenkins has been replaced on the General Election Commission of Rutherford County, Tennessee, by A. E. Ogden, a resident of Ruther-

ford County, Tennessee. The said A. E. Ogden, in his official capacity, is made a party defendant to this case without the necessity of amendment of pleadings or issuance of process. The defendants Nelson, Gwynne and Ogden are members of and comprise the General Election Commission of Rutherford County, Tennessee, whose duty it is to conduct and hold the elections in Rutherford County, Tennessee, and in the several school zones thereof for members of the County School Commission of Rutherford County, Tennessee. The defendant James Threet is the County Judge and Chairman of the Quarterly County Court of Rutherford County, Tennessee, and as such is the chief executive and administrative officer of Rutherford County, Tennessee.

4. Each member of the County School Commission of Rutherford County, Tennessee, has and exercises one vote upon the business transacted by said Commission, without regard to the number of persons or qualified voters in the school zone he represents and from which he is elected. The Chairman of the defendant School Commission does not, as a matter of practice, cast a vote except in the case of a tie, but he has the right to vote by virtue of his membership upon the Commission.

5. The qualified voter population (defined herein for the purposes of this stipulation as being the number of registered voters) of Rutherford County, Tennessee, as of January 1, 1965, was 21,272 according to the official records of the Registrar of Voters of said County. The school zones of Rutherford County, Tennessee, established under said Private Act, the civil districts which they comprise, and the total qualified voter population of each, as of January 1, 1965, are as follows:

| School Zone | Civil District(s) | Qualified Voters |
|---|---|---|
| 1 | 2, 3 | 2,319 |
| 2 | 1, 6, 9 | 1,162 |
| 3 | 4, 7, 12 | 983 |
| 4 | 8 | 652 |
| 5 | 13 | 10,110 |
| 6 | 5, 15, 21 | 1,156 |
| 7 | 16, 17, 22 | 797 |
| 8 | 18, 19, 23 | 1,954 |
| 9 | 20 | 560 |
| 10 | 10, 11, 14 | 1,118 |
| 11 | 24, 25 | 455 |

6. According to the official United States Census of Population for the years 1940 and 1950, the latter being the last census which reports population figures according to civil districts in various counties in Tennessee, the school zones of Rutherford County, Tennessee, under said Private Act, the civil districts which they comprise, and the total population of each, according to each said census, are as follows:

| School Zone | Civil District(s) | Census 1950 | Census 1940 |
|---|---|---|---|
| 1 | 2, 3 | 5,034 | 2,299 |
| 2 | 1, 6, 9 | 3,897 | 2,915 |
| 3 | 4, 7, 12 | 2,251 | 3,027 |
| 4 | 8 | 1,385 | 1,343 |
| 5 | 13 | 15,293 | 11,606 |
| 6 | 5, 15, 21 | 3,476 | 2,820 |
| 7 | 16, 17, 22 | 1,479 | 1,766 |
| 8 | 18, 19, 23 | 2,567 | 2,766 |
| 9 | 20 | 1,023 | 1,291 |
| 10 | 10, 11, 14 | 3,051 | 2,528 |
| 11 | 24, 25 | 1,240 | 1,243 |

According to the official United States Census of Population for 1960, the city of Murfreesboro, Tennessee, which comprises most but not all of the Fifth School Zone, 13th Civil District, had a total population of 18,991, and Rutherford County, Tennessee, had a total population of 52,368. A portion of the city of Murfreesboro is also in the Eighth School Zone, 18th Civil District.

7. Prior to the adjournment *sine die* of the 84th General Assembly of Tennessee, the State Senators and members of the House of Representatives which represented Rutherford County therein were contacted by the plaintiffs, or some of them, and requested to introduce and secure passage of legislation, the effect of which would be to equalize the voting population of the various school zones of districts which elect the members of the Rutherford County School Commission, or, in the alternative, which would provide for the election of county school commissioners at large. The response and position of the representatives of Rutherford County in the Legislature was that they would not introduce or attempt to pass any "local" legislation unless and until they were requested to do so by a majority of the governmental agency or unit proposed to be affected by such legislation or by an elected representative purporting to speak for the Quarterly County Court of Rutherford County, Tennessee; and that upon a request as outlined above they would be willing to introduce, support and attempt to obtain passage of such legislation. Thereafter, the plaintiffs, or some of them, personally appeared before the Legislative Committee of the Quarterly County Court of Rutherford County, Tennessee, in January 1965 and requested said Committee to request the passage of such legislation by the Rutherford County representatives in the Legislature. The Legislative Committee of the Quarterly County Court took the position that it could not or would not make such request of said representatives unless and until it in turn was requested to do so by the Rutherford County School Commission or its Legislative Committee. A meeting of the Rutherford County School Commission was held in Murfreesboro on February 27, 1965, at which meeting a quorum was present. At the meeting, the request made by Mr. Thomas Wardlaw Steele, attorney for the plaintiffs in this case, by a letter dated February 19, 1965, that the Commission request of the Rutherford County representatives the passage of legislation to correct the alleged disproportionate representation on the Commission, was discussed. During the meeting, one member of the Commission, namely, Mr. Joe Sloan, made the following motion:

"WHEREAS, all the voters of the 5th School Zone with whom I have talked have expressed the opinion, without exception, that the present school zone boundaries should be revised to provide more-or-less equal representation of all the voters of the county on the school Commission, and

"WHEREAS, this is my own personal belief,

"I THEREFORE MOVE that the County School Commission ask the Tennessee General Assembly now in session to *amend* those parts of the Private Act of 1943 that define the present school zones, so as to *empower* the Rutherford County Quarterly Court to change the number of zones and to establish and revise boundaries from time to time in order that each zone may contain approximately the same number of voters, but in no case to allow the number of voters in one zone to increase to the point that they outnumber voters in any other zone by more than 2 to 1."

Mr. Sloan's motion died for lack of a second, and no action was taken thereon. A copy of Mr. Steele's letter of February 19, 1965, is attached hereto as Exhibit No. 2 to this stipulation and made a part hereof.

8. The Rutherford County School Commission has taken no action to secure or attempt to secure remedial legislation to correct the discrepancies in represen-

tation complained of by the plaintiffs in this cause.

9. The school affairs of Rutherford County, Tennessee, are administered by the vote of the eleven school commissioners thereof within the power and authority conferred upon it and school boards generally by the general laws of the State of Tennessee and Chapter 426, Private Acts of Tennessee, 1943. Certain school affairs are also administered by the County Superintendent of Rutherford County, Tennessee, in accordance with the laws of the State of Tennessee; and the Quarterly County Court of Rutherford County, Tennessee, adopts the annual budget for the school system of Rutherford County, Tennessee, based upon a proposal initially made by the defendants, Rutherford County School Commission, and further levies such local taxes as may be necessary to meet the fiscal requirements of said budget.

10. The defendants Nelson, Gwynne and Ogden, constituting the General Election Commission of Rutherford County, Tennessee, will continue to hold elections for the election of County School Commissioners for Rutherford County, Tennessee, under the provisions of Chapter 426, Private Acts of Tennessee, 1943, as amended, unless restrained and enjoined from so doing by the Court in this cause.

11. The city of Murfreesboro, Tennessee, has its own school system, operating grades one to eight, inclusive, but not high schools. The city of Murfreesboro, Tennessee, operates six (6) elementary schools. The Rutherford County School Commission operates three (3) schools in the Fifth School Zone of Rutherford County, Tennessee, two (2) of which are high schools and one (1) of which is an elementary school, these being in addition to the Campus School operated as hereinbefore stipulated.

12. Under practices of the General Assembly of Tennessee, the defeat or passage of local legislation is determined by the will of the local representative or representatives in the House and Senate, with extreme rare exceptions.

13. The foregoing stipulation is not an admission by the parties that the facts stipulated are relevant to the issues, nor is it a waiver of any contention as to irrelevancy.

Collective Exhibit No. 1

# MIDDLE TENNESSEE STATE UNIVERSITY

### MURFREESBORO, TENNESSEE   37130

**DEAN—SCHOOL OF EDUCATION**

November 10, 1965

Mr. Edwin Hunt
Attorney-at-Law
American Trust Building
Nashville, Tennessee

Dear Mr. Hunt:

At the request of Mr. Whitney Stegall I am enclosing a document setting forth an agreement in regard to the operation of a Campus School in connection with Middle Tennessee State University. I believe this agreement has not been made annually but

rather it has been understood that it would hold until such time as either party to the agreement should request modification. I hope that this will be sufficient to clarify any question you might have in regard to this operation.

Sincerely yours,

(s) W. B. Bowdoin/j. p.
W. B. Bowdoin, Dean
School of Education

WBB/rjp

Enclosure

## AGREEMENT

Between the Tennessee State Board of Education and the Rutherford County School Commission for the operation and maintenance of the Training School at Middle Tennessee State College for the year July 1, 1962 to June 30, 1963

The Tennessee State Board of Education acting through Middle Tennessee State College and the Rutherford County School Commission enter into the following agreement and contract for the operation and maintenance of the Training School at Middle Tennessee State College, Murfreesboro, Tennessee:

1. The State Board of Education will furnish the building and equipment, heat, light, water and janitorial service, and will maintain the building and grounds for the Training School.

2. The Rutherford County School Commission will pay the salaries of the teachers in the elementary grades one through eight for ten months according to the State salary schedule for elementary teachers. The quota of teachers for the elementary grades will be determined by the policies of the State Board of Education and the Rutherford County School Commission.

3. It is further agreed that the Rutherford County School Commission will provide instructional materials, health education services; and school plant operation to the extent allowed for the minimum program as provided in Chapter 5, Acts of 1961, and other applicable Acts and Regulations.

4. It is further agreed that it is the purpose and intent of the parties to this agreement that the Training School shall be administered for the mutual benefit of Rutherford County and the State Board of Education and Middle Tennessee State College, and in accordance with Section 49–3204, Code of Tennessee, as amended by Chapter 58 of the Public Acts

of 1961, providing for the maintenance of Training Schools of the Teachers Colleges of the State.

TENNESSEE STATE BOARD OF EDUCATION for Middle Tennessee State College

Date: 6/26/62     by _____(s) Joe Morgan_____ Chairman
                        State Board of Education

Date: 5/2/62      by _____(s) Quill E. Cope_____ President
                        Middle Tennessee State College

RUTHERFORD COUNTY SCHOOL COMMISSION

Date: _____     by _____(s) T. P. Burns_____ Chairman

---

Exhibit No. 2

LAW OFFICES

GULLETT, STEELE & SANFORD

B. B. GULLETT
THOMAS WARDLAW STEELE
VAL SANFORD
CHARLES HAMPTON WHITE
W. HAROLD BIGHAM
JACK W. ROBINSON

SEVENTEENTH FLOOR,
LIFE & CASUALTY TOWER
NASHVILLE 3, TENNESSEE
TELEPHONE 256-5696

February 19, 1965

Mr. T. P. Burns, Chairman
County School Commission
Rutherford County
Murfreesboro, Tennessee

Dear Mr. Burns:

This firm has been employed by Mr. and Mrs. Roscoe L. Strickland, Jr., Mr. and Mrs. John O. Dillingham, Mr. and Mrs. Wilkes Coffey, Jr., Mr. and Mrs. Alexander E. Harvey, Mrs. Sue M. Ragland, Mr. and Mrs. W. E. Hodges, Mr. Joseph Patrick Qualls, Mr. and Mrs. Charles Philip Howard and others, all of whom are citizens, taxpayers and qualified voters of the Fifth School Zone, Thirteenth Civil District, of Rutherford County, Tennessee, to represent them in enforcing their constitutional right to bring about a reapportionment of the membership of the Rutherford County School Commission so as to eliminate the disproportionate representation and discrimination against the residents and qualified voters of the Fifth School Zone which now exists under the provisions of Chapter 426, Private Acts of Tennessee, 1943, as amended.

As you know, said Private Act provides for an eleven-man school board, with one member each to be elected from designated

school zones. The school zones are established in the Act, and each of them encompasses one or more civil districts of Rutherford County, Tennessee. Representation on the school board of the qualified voters of the county is established without regard to the number of voters residing in each school zone, but is provided for purely on a discriminatory geographic basis. The voter population of the school zones of Rutherford County, Tennessee, varied as of January 1, 1965, from 10,110 (Fifth School Zone) to 560 (Ninth School Zone). Other than the Fifth School Zone (Thirteenth Civil District), there are only two other school zones which had sufficient voter population to entitle them to one member on a properly apportioned school board, they being School Zone No. 8 and School Zone No. 1.

All of the rest of the school zones established in said Act had voter population far below that which would entitle them to one representative on the school board.

Our clients or their representatives have heretofore requested the representatives and senators who represent Rutherford County, Tennessee, in the current State Legislature to pass remedial legislation correcting this discriminatory arrangement. They were informed by Rutherford County's representatives in the Legislature that due to a long-standing tradition in Rutherford County, Tennessee and in keeping with campaign pledges which they made during their campaign for office, they would not pass new legislation affecting Rutherford County, Tennessee, unless the same was requested by the Quarterly County Court or some other governmental unit of the county, such as the School Commission. Thereupon, our clients or their representatives went before the Legislative Committee of the Quarterly County Court and requested it to request such remedial legislation. They were advised that the Legislative Committee of the Quarterly County Court would not request such legislation unless the School Commission in turn requested the court committee to do so or approved its doing so. Thereupon, our clients have been advised that the Rutherford County School Commission has been asked by the Legislative Committee of the Quarterly County Court whether or not it would request legislation, that the Rutherford County School Commission appointed a subcommittee to consider the matter, and that neither the subcommittee nor the Rutherford County School Commission to this date has taken any action to indicate whether or not it would request such legislation.

As you know, the 84th General Assembly is currently in session and is more than half way through its allotted time of seventy-five days. We are advised that the last date for introducing private acts in the Legislature has been set at March 9, 1965. If remedial legislation is to be enacted at the current session of the Legislature, it is imperative that the Rutherford County School

Commission take action to request such legislation without further delay, and, in any event, in time for it to be prepared and introduced not later than March 9, 1965.

We respectfully submit to you that under the holdings of the Supreme Court of the United States in Baker v. Carr, 369 U.S. 186, as well as a number of other decisions which have followed that holding, the provisions of Chapter 426, Private Acts of Tennessee, 1943, which apportioned the membership of the County School Commission in the manner above described, are clearly violative of our clients' rights as citizens of the United States which are secured and guaranteed them by the Fourteenth Amendment to the Constitution of the United States. We have been employed to institute suit, if necessary, in Federal Court for declaratory judgment of our clients' rights, as aforesaid, and of the unconstitutionality of that portion of the Private Act as aforesaid, and for injunctive relief to enforce those rights, if the same becomes necessary. However, you have it within your power to correct the invidiously discriminatory law now in effect by making a request of the legislative representatives of Rutherford County, Tennessee, to pass legislation which will not be discriminatory but which will properly apportion the School Commission members in accordance with the voter population of the various districts which they represent. It would be our fond hope and that of our clients that you would see fit to make such request promptly in order that such legislation may be prepared and introduced prior to March 9, 1965, in the current Legislature.

Please consider this a formal request and demand on behalf of our clients that you request the passage of such legislation and do so in time for it to be prepared and introduced not later than March 9, 1965. We will be most happy, on behalf of our clients, to meet with any of your representatives and to render such assistance as we can in the preparation of such legislation.

It would be appreciated if you would favor us and, through us, our clients with a reply as soon as you have reached a decision concerning the request and demand made herein.

Please consider this a formal request for action to the entire School Commission of Rutherford County, Tennessee. A copy of this letter is being sent to each member thereof.

Very truly yours,

GULLETT, STEELE & SANFORD

/S/   Thomas Wardlaw Steele

By

Thomas Wardlaw Steele

TWS:ejj

MILLER, District Judge, (concurring):

I concur in Judge Gray's opinion in this case. I would add only a few comments. It is fruitless, in my view, to pursue the elusive distinction between legislative and administrative functions. Many attempts have been made to draw the distinction in varied contexts. But whatever value the dichotomy may have for some purposes to rationalize a particular result, I am convinced that it is inapposite here. So long as a subordinate body is vested with significant and important powers of government, whether they be labelled legislative, or administrative, or both, I can see no reason why it should be permissible under the equal protection clause for a state arbitrarily to debase the value of one person's vote in favor of another. I think that the powers and duties vested by state law in the Rutherford County School Commission are both significant and important. If the General Assembly of Tennessee sees fit to provide that the membership of such a body shall be chosen by popular vote, invidious discriminations between voters should be condemned under the "one man, one vote" rule. The difference between this case and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L. Ed.2d 506, is one of degree and not of principle.

HARRY PHILLIPS, Circuit Judge (sitting as district judge by designation), (dissenting):

I do not agree that the "one man, one vote" rule applies to the Rutherford County School Commission, which is a local administrative agency created by the Legislature to administer the affairs of the county school system.

The Tennessee apportionment statute now provides for reapportionment of the Legislature upon the basis of population in accordance with Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. Under the latest decision in Baker v. Carr, 247 F. Supp. 629 (M.D.Tenn.), the General Assembly which will be elected in November 1966 and which will convene on the first Monday in January 1967 will be a validly apportioned body under the "one man, one vote" rule.

In Tennessee a school board or district is an arm or instrumentality of government subject to the unlimited control of the Legislature. Taylor v. Taylor, 189 Tenn. 81, 222 S.W.2d 372; Kee v. Parks, 153 Tenn. 306, 309, 283 S.W. 751. It is "under the control of the legislature, so that it may be abolished, or its power may be enlarged or its responsibilities increased, at any time, by that body, without the danger of encountering constitutional difficulties." Edmondson v. Board of Education, 108 Tenn. 557, 561, 69 S.W. 274, 275, 58 L.R.A. 170. It has "no rights which the legislature may not subsequently modify or abrogate." Cunningham v. Broadbent, 177 Tenn. 202, 207, 147 S.W.2d 408, 410; Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015; City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937.

Further, the powers of the Rutherford County School Commission are administrative, not legislative, in character. It does not have the power of taxation, nor could such authority be delegated to it by the Legislature. Williamson v. McClain, 147 Tenn. 491, 249 S.W. 811; Waterhouse v. Cleveland Public Schools, 68 Tenn. 398. It is not authorized to adopt ordinances or otherwise exercise legislative powers. Although created by private statute, Chapter 426, Private Acts of 1943, its powers are controlled by the general school laws of the State, TCA, Title 49, by the General Education statute enacted biennially by the Legislature (see, e. g., Ch. 76, Public Acts of 1965;

Ch. 39, Public Acts of 1963), and by rules and regulations promulgated by the State Board of Education.

We cannot assume that the Tennessee Legislature, which now has been reapportioned on a constitutional basis, will fail to correct any malapportionment that may exist in its arms, agencies and instrumentalities, when corrective measures are needed. I do not read Reynolds v. Sims, supra, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and Baker v. Carr, supra, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 2d 663, as construing the Fourteenth Amendment to require extension of the "one man, one vote" rule to *every* local election, and particularly the election of local agencies possessing no legislative powers. See Weinstein, The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government, 65 Colum.L.Rev. 21.

Once the Legislature is validly constituted, I do not believe there is a constitutional requirement that personnel of its subservient arms and agencies, created to perform purely administrative functions, must be elected on the "one man, one vote" basis.

In my opinion the election of members of the Rutherford County School Commission, in accordance with the private statute here involved, does not violate rights secured to plaintiffs by the Fourteenth Amendment. Glass v. Hancock County Election Commission, 250 Miss. 40, 156 So.2d 825, appeal dismissed, 378 U.S. 558, 84 S.Ct. 1910, 12 L.Ed.2d 1035; Tedesco v. Board of Supervisors of Elections, La.App., 43 So.2d 514, appeal dismissed for want of a substantial federal question, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357; Lynch v. Torquato, 343 F.2d 370 (C.A.3); Moody v. Flowers, 256 F. Supp. 195, (M.D.Ala.); Johnson v. Genesee County, Michigan, 232 F.Supp. 567 (E.D.Mich.).

I would dismiss the complaint.