CUNNINGHAM *et al. v.* BROADBENT *et al.*

(*Nashville,* December Term, 1940)

Opinion filed February 15, 1941.

204

Stout & Porter and James C. Cunningham, all of Clarksville, and W. M. Leech and Ray Stuart, both of Charlotte, for appellants.

Roy H. Beeler, Atty.-Gen., and W. F. Barry and Harry Phillips, Asst. Attys.-Gen., for appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

The Chancellor sustained a demurrer to this bill challenging the constitutionality of Chapter 165, Section 6, Public Acts of 1937, and Chapter 188, Public Acts of 1939, whereby the Legislature reduced the interest rate paid by the State to counties on highway re-imbursement bonds. A declaratory judgment was sought in the Chancery Court. The Chancellor dismissed the bill and complainants appeal.

Chapter 23 of the Public Acts of 1927 provided for the State to re-pay to the respective counties amounts expended by them in the construction of public highways up to the 31st day of December, 1926, together with such additional amounts as the Commissioner of Highways and Public Works should agree in writing to accept between January 1, 1927, and December 31, 1928; and the act further provided that the State should pay 5 per cent interest upon the amount owing to each county, and recited that it was contemplated that the principal would be paid within twenty years from January 1, 1929.

Complainants are the County of Dickson, John T. Cunningham, a taxpayer of Dickson County, and W. M. Leech, a resident and taxpayer of Dickson County, who is also the owner of Bond No. 121 for $1,000 of an issue known as "Dickson County Highway Bonds, Bond Series 1928."

Defendants, appellees, are State officials, members, respectively, of the State Board of Claims and the State Funding Board.

Complainants, who are appellants here, contend that contracts rights, vested in them by the Act of 1927, *supra*, are impaired by the aforesaid Acts of 1937 and 1939. The constitutional provisions invoked are Section 20, Article 1, of the State Constitution, and Section 10, Article 1, of the Constitution of the United States, being those sections safe-guarding contract obligations.

The grounds of the demurrer are, in substance, (1) that no contractual relationship exists or has existed between the State and Dickson County, the reimbursement statutes being strictly gratuitous; (2) that no contractual relationship or privity of contract exists between the State and complainant W. M. Leech as a bondholder of Dickson County Highway Bonds, or between the State and complainants Cunningham and Leech as property owners and taxpayers of said County; and (3), even if the obligations averred in the bill be construed to constitute a contract, that it was a contract between the State and one of its political subdivisions and, as such, is not protected by the State or Federal Constitutions from subsequent alterations or revocation by the State Legislature.

We do not regard it necessary to set forth in this opinion the details of the provisions of the several acts hereinbefore designated, the pertinent provisions of which have been sufficiently stated, as we are of opinion that the issues presented are determined by certain well settled principles without regard to what may be the specific terms of these acts. It is manifest, as held by the learned Chancellor, that if a contract was created by these enactments, it was one solely between the State and counties, including the County of Dickson, and com-

plainant Leech, as a bondholder, was in no sense a party thereto, his obligor being Dickson County and Dickson County only; and that, furthermore, this bondholder has alleged no default, nor the insolvency of Dickson County, nor any injury of which he has a status to complain.

Appellant relies on the rule that a grantee of land, who assumes a mortgage outstanding thereon, becomes liable to the mortgagee, no privity of contract being held necessary, as was the English rule; but this rule has not been applied to a purely gratuitous assumption, without consideration. Its application by this court, so far as we are advised, has been limited to cases where the land was acquired by the grantee. See *Wright* v. *Bank of Chattanooga,* 166 Tenn., 4, 57 S. W. (2d), 800, quoted from for appellant, and our cases cited therein. Moreover, a well recognized essential predicate for the application of this rule is that the assumption agreement shall be a binding and enforcible obligation as between the original parties—here the State and the County. In stating the rule of liability, this limitation upon it, and, also, the further limitation that the debt must have become due and payable, that is, in default, is thus expressed in the text of 41 C. J., 743, with supporting citations in the notes:

"A grantee who has assumed and agreed to pay the mortgage debt, whether by covenant in his deed or because of a deduction or retention from the purchase money to discharge the encumbrance, according to the rule now generally accepted in the United States, incurs a personal liability to the mortgagee which may be enforced in some form by the mortgagee against him, if the assumption agreement is valid and binding, and the debt has become and remains due and payable."

It will be hereinafter seen that we do not find here a

binding contract of assumption with the County of Dickson on the part of the State.

██ Furthermore, we agree with the Chancellor that no privity is shown to exist between the State and the individual taxpayers of Dickson County, who were not parties to any agreement or arrangement provided for by these enactments and acquired no vested rights there- under. This has been long established. See *McCallie* v. *Chattanooga*, 40 Tenn. (3 Head), 317. It results that there was no error committed by the Chancellor in sustaining this demurrer insofar as it challenged the alleged rights of Messrs. Cunningham and Leech to sue as taxpayers and of W. M. Leech to sue as a bondholder.

██ With respect to the rights asserted on behalf of the County of Dickson, it is answered, as before shown, first, that no contractual relationship exists between the State and the County by virtue of these enactments, and, second, that if a contract was created thereby, the County being merely a political subdivision of the State, such contract is not protected by the State or Federal Constitutions from alteration or revocation. In disposing of this question the learned Chancellor very concisely and forcefully said: "The County is a subdivision and arm of the State, and the parties were dealing with governmental purposes and objects. Neither the Constitution of Tennessee, nor of the United States, imposes any restraint upon legislation affecting the con-tractual relations between the State and its political subdivisions, entered into in their governmental capac-ities and dealing with governmental functions. In such functions the County has no rights which the Legislature may not subsequently modify or abrogate. *City of Trenton* v. *New Jersey*, 262 U. S., 182 [43 S. Ct., 534], 67 L. Ed., 937, 29 A. L. R., 1471; *City of Memphis* v.

*Memphis Water Co.*, 52 Tenn. (5 Heisk.), 495; *State ex rel.* v. *Cummings*, 130 Tenn., 566 [172 S. W., 290, L. R. A. 1915D, 274] ; *Robertson* v. *Town of Englewood*, 174 Tenn., 92 [123 S. W. (2d), 1090].'' The Chancellor cites these four cases only, of the many to the same effect cited and discussed in the able brief for the State.

Concurring, as we do, with this holding of the Chancellor, it becomes immaterial to consider whether or not the assumption Act of 1927 gave rise, or support, to what might be termed ''contracts'' between the State and counties acting under it. Conceding this, which we do not, appellants have no remedy, it being within the power of the Legislature to take from its subdivisions what is voluntarily bestowed upon them; and this so-called contract of assumption by the Act of 1927 not being binding and enforcible by the County, the holder of the County's obligation which purported to be assumed by it has no legal recourse against the State.

If we read aright the authorities cited and quoted from by learned counsel for appellants for the view that these constitutional provisions apply to contracts of the State, they have application to contracts of the State with parties other than its own arms and subdivisions— that is, with itself, in some special form, for convenience in governmental operations of one kind or another. This distinction, which counsel fail to recognize, runs through all the authorities. We give one illustration, from a much cited encyclopedic text. Counsel quote on their brief from 12 Corpus Juris, page 996, as follows: ''It is a well established principle that a contract to which a state is a party is as much within the constitutional prohibition of statutes impairing the obligation of contracts as a contract between individuals.'' This is good as far as it goes. But turning to page 1003 of this same volume,

we read: "Municipal corporations, such as *counties,* cities, and towns, being mere creatures and agents of the state, stand in their governmental or public character *in no contract relations with the state,* and so are not within the provision that renders law impairing the obligation of contracts unconstitutional." We have italicized determinative significant language.

The decree of the Chancellor sustaining the constitutionality of these acts is affirmed.