Lee **HYDEN** et al.

v.

Charles W. **BAKER** et al.

R. W. **BENNETT** et al.

v.

James D. **ELLIOTT** et al.

Civ. Nos. 4674, 4697.

United States District Court
M. D. Tennessee,
Nashville Division.

Feb. 13, 1968.

476

Civ. No. 4674:

Herbert B. Moriarity, Jr., Memphis, Tenn., for plaintiffs.

William H. Williams, R. Lee Winchester, Jr., James W. Watson, Memphis, Tenn., and Thomas E. Fox, Deputy Atty. Gen., State of Tennessee, Nashville, Tenn., for defendants.

Civ. No. 4697:

Frank Bryant, Bryant, Price, Brandt & Torbett, Johnson City, Tenn., for plaintiffs.

Robert M. May, Jonesboro, Tenn., Edwin F. Hunt, and Thomas E. Fox, Deputy Atty. Gen., State of Tennessee, Nashville, Tenn., for defendants.

Before PHILLIPS, Circuit Judge, and WILLIAM E. MILLER and FRANK GRAY, Jr., District Judges.

## OPINION

FRANK GRAY, Jr., District Judge.

In these actions, the respective plaintiffs allege that the provisions of T.C.A. § 19–101, portions of private acts related thereto, and the last grammatical sentence of Article VI, § 15, of the Tennessee Constitution, have resulted in an unconstitutional malapportionment of the quarterly county courts of their respective counties and of other counties in Tennessee.[1] The thrust of the complaints is twofold: first, that the equal population or "one-man, one-vote" principle enunciated in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), applies to the apportionment of this level of local government in Tennessee, and, secondly, that the apportionment of the Quarterly Courts of Shelby and Washington Counties pursuant to the challenged provisions has resulted in a disparity of representation in violation of the Reynolds v. Sims doctrine. Consequently, these actions were instituted against various state and local officials seeking declaratory and injunctive relief.

This court was designated, pursuant to 28 U.S.C. §§ 2281 and 2284, to hear and determine the issues in both actions. Upon convening, a motion to consolidate these actions was denied, although it was ordered that they would be heard together to the extent that the issues were the same. After careful consideration, we are of the opinion that, notwithstanding certain differences in the nature of the alleged malapportionment, the identity of the underlying issues raised by both suits warrants their common disposition.

## I

We are faced with the same threshold question in each action: whether the questions presented come within the particular competence of this court as defined by 28 U.S.C. § 2281. Before this question of statutory compliance can be reached, however, the prefatory issue of subject matter jurisdiction must be decided.

■■ Unlike a single judge district court, the subject matter jurisdiction of a statutory three-judge court is not satisfied merely by the allegation that a federal question is involved or that there is diversity of citizenship and the requisite jurisdictional amount. To comply with this preliminary jurisdictional requirement, the complaint must raise a substantial federal question not foreclosed by prior decisions. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). The common contention here is that the equal population standard which Reynolds v. Sims held applicable to state legislative apportionment applies as well to the apportionment of the quarterly courts of Tennessee counties. We are of the opinion that this does present a substantial federal question which, in light of Moody v. Flowers, 387 U.S. 97, 87 S. Ct. 1544, 18 L.Ed.2d 643 (1967), Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), and Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967), cannot be regarded as foreclosed by prior decisions and, therefore, that the complaints herein

---

1. Both of these actions were brought by the respective plaintiffs in their own behalf, on behalf of all qualified voters in Shelby and Washington Counties, respectively, and on behalf of "all qualified voters of the State of Tennessee who are, or may become, similarly situated."

In an order entered simultaneously herewith is incorporated this court's determination that the respective plaintiffs may maintain, under Rule 23, Federal Rules of Civil Procedure, these actions as class actions on behalf of themselves and others similarly situated in their respective counties, but not on behalf of persons in other counties in Tennessee.

come within the rule of Ex parte Poresky, supra.

Section 2281 provides, in pertinent part, that:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute * * * shall not be granted by any district court or judge thereof upon the ground of unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

■■ The intent of Congress in enacting this statute was to create a special forum and appellate procedure for adjudicating suits seeking the invalidation of state statutes embodying important state policies. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965) The limited nature of the litigation thus contemplated and the serious administrative burdens imposed by the § 2281 procedure on the federal courts[2] necessitate that it be applied "not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term * * *." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). Viewing the statute in this manner, the dispositive jurisdictional issue is whether the constitutional and statutory provisions in question are "state statutes" within the purview of § 2281.

■ Although the Supreme Court in American Federation of Labor v. Watson, 327 U.S. 582, 592–593, 66 S.Ct. 761, 90 L.Ed. 873 (1946), stated that "the word 'statute' in § 266 [the predecessor of § 2281] is a compendious summary of various enactments, by whatever method they may be adopted, to which a State gives her sanction," this all-inclusive definition has not been followed. Rather,

"state statute" generally has been interpreted in terms of the basic objective of § 2281, that is, preventing the "improvident state-wide doom by a federal court of a state's legislative policy." Phillips v. United States, 312 U.S. at 251, 61 S. Ct. at 483. Accord, Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Thus, it appears well settled that a three-judge court is properly convened only if the statute under attack is of statewide and general, as opposed to local and limited application. See, e. g., Moody v. Flowers, supra; Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); City of Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L. Ed. 274 (1945); Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L. Ed. 990 (1928). The fact, however, that a portion of Article VI of the Tennessee Constitution is here under attack does not preclude the exercise of § 2281 jurisdiction for it is clear that the term "state statute" is not limited to legislative enactments but may include state constitutional provisions. Sincock v. Duffy, 215 F.Supp. 169 (D.Del.1963), affirmed, Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1963).

The resolution of the instant jurisdictional issue, therefore, is a matter of whether the provisions in question express a policy of the State of Tennessee which is of "state-wide interest and concern." Ex parte Collins, 277 U.S. at 567, 48 S.Ct. at 585. This question cannot be answered realistically by examining these laws in a vacuum; rather, they must be analyzed in the context of the general quarterly county court apportionment scheme.

The quarterly courts of Tennessee counties are composed of Justices of the Peace elected by the qualified voters residing either within a civil district or an

---

2. See Evergreen Review, Inc. v. Cahn, 230 F.Supp. 498, 502 (E.D.N.Y.1964).

incorporated town,[3] these being the two geographical subdivisions entitled to representation. The framework of this dual constituency structure is set out in Article VI, § 15, of the Tennessee Constitution, which provides, *inter alia,* that:

"The different Counties of this State shall be laid off, as the General Assembly may direct, into districts of convenient size, so that the whole number in each County shall not be more than twenty-five, or four for every one hundred square miles. There shall be two Justices of the Peace * * * elected in each district by the qualified voters therein, except districts including County towns, which shall elect three Justices, * * *. The Legislature shall have power to provide for the apportionment of an additional number of Justices of the Peace in incorporated towns."

The broad legislative powers thus granted to the General Assembly have been exercised in an amalgam of general statutes and private acts. The Legislature by general statute has provided that: the counties of Tennessee are to be divided into civil districts, T.C.A. § 5–108; that the qualified voters in each civil district, except those districts including county or incorporated towns, are to elect two Justices of the Peace, T.C.A. § 19–102; and that the qualified voters in civil districts including county towns are to elect three Justices of the Peace, T.C.A. § 19–103.[4] The actual districting pursuant to these guidelines,

however, is effected by private acts on an individual county basis. The lack of uniform districting produced by these private acts is illustrated by the counties in question: Shelby County is divided by Chapter 522, Private Acts of 1935, as amended by Chapter 166, Private Acts of 1939, into two civil districts electing five Justices of the Peace[5] and Washington County is divided by Chapter 421, Private Acts of 1919, into eighteen civil districts electing thirty-seven Justices of the Peace. As shown, infra, additional Justices are elected from the incorporated towns in these counties.

Similarly, the last sentence of Article VI, § 15, Tennessee Constitution, confers upon the General Assembly the power to apportion representation to incorporated towns both by general statute and private act.[6] The general statute enacted pursuant to this grant provides that "[f]or every incorporated town, one (1) justice is to be elected by the qualified voters therein." T.C.A. § 19–101. Accordingly, the Justices of the Peace allocable to incorporated towns in a given county is determined by the number of incorporated towns entitled to a single representative by virtue of T.C.A. § 19–101 and any additional Justices allotted to specific towns by private acts. In Shelby County, for example, each of the six incorporated towns elects one Justice of the Peace under T.C.A. § 19–101, there being no supplementary private act. In Washington County, by way of contrast, the number of Justices elected

---

3. The minimum requirements for incorporation are that the municipality must have a population of 200 and must contain real estate worth at least $5,000. T.C.A. § 6–101.

4. Districts including a "county town" refer to those where the county courthouse is physically located. State ex rel. Flournoy v. Cates, 105 Tenn. 441, 58 S.W. 649 (1900).

5. Chapter 522, Private Acts of 1935, as amended by Chapter 166, Private Acts of 1939, was superseded by Chapter 210, Private Acts of 1965, which divides Shelby County into nine civil districts. The latter, however, does not become effective

with respect to the composition of the Quarterly Court until the August, 1972 General Election and, accordingly, it has no bearing on the present apportionment.

6. The Tennessee Courts have consistently held that this provision vests the General Assembly with an express legislative power to provide by private act that an incorporated town may elect a definite number of Justices in addition to that permitted under T.C.A. § 19–101. See, e. g., Brown v. Knox County, 187 Tenn. 8, 212 S.W.2d 673, 5 A.L.R.2d 1264 (1948).

in this manner is six, one each from the incorporated towns of Jonesboro and Johnson City and four additional Justices allotted to the latter under Chapter 421, Private Acts of 1919.

While acknowledging that T.C.A. § 19–101 and the last sentence of Article VI, § 15, on their face are generally applicable, defendants contend that the variance in urban representation occasioned by supplementary private acts and the fact that not all counties retain the quarterly court form of county government,[7] render any malapportionment caused by these provisions local in nature. Thus, it is argued that the basis for convening a three-judge court has not been established.

■ This assertion is not well taken. The telling jurisdictional factor is that the challenged portion of Article VI, § 15, of the Tennessee Constitution and the general law and private acts authorized thereby express a legislative policy which applies generally throughout the State: that incorporated towns regardless of population are entitled to representation at the quarterly court level of county government.

As we have indicated, this general policy in many instances is effected by private acts which the defendants characterize as local in nature. The defect in this characterization is that these private acts, when considered in the context of the general scheme of quarterly court apportionment, are only the means of implementing in specific counties a policy which is applicable to substantially all of the counties in Tennessee. It is this substantial statewide applicability which distinguishes the instant actions

from Moody v. Flowers, supra, Strickland v. Burns, 256 F.Supp. 824 (M.D. Tenn.1966), and other local apportionment cases holding that an attack on the constitutionality of a local ordinance or charter or on a state statute of limited application does not require a statutory three-judge court.[8]

In Moody v. Flowers, the Alabama statute in question dealt solely with the apportionment and districting of the Houston County Board of Revenue and control.[9] The Supreme Court, focusing on the limited scope of this act, held that it was not of statewide concern for purposes of 28 U.S.C. § 2281. Similarly, in Strickland v. Burns, the statute in question was a private act pertaining only to the apportionment of the school commission of Rutherford County, Tennessee.[10] This court, convened pursuant to 28 U.S.C. §§ 2281 and 2284, held that the decidedly local nature of the act in question precluded the exercise of its statutory jurisdiction and, consequently, the action was remanded. 256 F.Supp. at 825 n. 1. Thus, in *Moody* and *Strickland* both the mode and substantive content of the apportionment scheme were clearly local in nature, while in the instant actions the provisions in question are premised upon and expressive of a generally applicable apportionment policy. That this policy may be implemented in specific counties, and in varying degrees, by private acts does not lessen its statewide character.

Our determination that the plaintiffs have made a substantial attack on provisions of statewide application also resolves the subsidiary questions of whether the complaints seek to enjoin a "state

---

7. The only county cited in illustration of this contention is Davidson County, whose quarterly court, by the adoption of the Charter of Metropolitan Government of Nashville and Davidson County, was practically denuded of power.

8. See, e. g., Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D. Pa.1965); McMillan v. Wagner, 239 F. Supp. 32 (S.D.N.Y.1964); Ellis v. Mayor and City Council, 234 F.Supp. 945 (D.Md. 1964), affirmed, 352 F.2d 123 (4th Cir.

1965); Johnson v. Genesee County, 232 F.Supp. 563 (E.D.Mich.1964).

9. 1 Acts of Alabama, 1957 Reg.Sess. 30.

10. This act dealt with the composition of an eleven member county school commission and provided that one member was to be elected from each of eleven school zones of disproportionate population. Priv.Acts Tenn.1943, ch. 426, at 1448, as amended.

officer" within the meaning of 28 U.S.C. § 2281 and of whether Bennett v. Elliott was properly brought in the Middle District of Tennessee.

In Bennett v. Elliott, plaintiffs seek to enjoin local officials from holding elections for the Washington County Quarterly Court pursuant to Article VI, § 15, Tennessee Constitution, T.C.A. § 19–101, and Chapter 421, Private Acts of 1919. The injunctive relief sought in Hyden v. Baker is much broader in that plaintiffs seek to restrain certain state officials from holding quarterly county court elections throughout the state pursuant to Article VI, § 15, Tennessee Constitution, and T.C.A. § 19–101 and portions of any private acts related thereto. However, our determination that the class represented in each of these actions is limited to the qualified voters residing in the two counties in question requires that the injunctive relief sought in Hyden v. Baker be treated as substantially that sought in Bennett v. Elliott, that is, restraining local officials from holding elections for the Shelby County Quarterly Court. The relevant considerations in determining compliance in both actions were restated by the Supreme Court in Moody v. Flowers, 387 U.S. at 101–102, 87 S.Ct. at 1548:

> "The officer sought to be enjoined must be a state officer; a three-judge court need not be convened where the action seeks to enjoin a local officer, unless he is functioning pursuant to a statewide policy and performing a state function." [Citations omitted.]

■ We believe that, although the relief sought in these cases is local in nature, the statewide policy reflected in Article VI § 15, T.C.A. § 19–101, and Chapter 421, Private Acts of 1919, has the effect of rendering these local officials "state officers" within the meaning of 28 U.S.C. § 2281.

Additionally, the Attorney General of Tennessee has been made a party defendant in both of these actions. This is in accord with the determination of the Tennessee Supreme Court that T.C.A. § 23–1107 requires that the Attorney General be a party defendant in any declaratory action challenging the constitutionality of a state statute. Buena Vista Special School District v. Board of Election Commissioners, 173 Tenn. 198, 116 S.W.2d 1008 (1938); Cummings v. Beeler, 189 Tenn. 151, 223 S.W.2d 913 (1949).

Accordingly, we hold that the complaints herein have presented questions requiring a statutory three-judge court.

■ In Bennett v. Elliott, plaintiffs base venue on 28 U.S.C. § 1392(a), which provides that a civil action against defendants residing in different districts within a state may be brought in any such district in the state, provided that the action is not local in nature. Upon consideration, we are of the opinion that this provision is satisfied by the substantially statewide applicability of the provisions under attack.

■ Thus, the question here is that of the capacity of any of the state officials named as parties defendant to be sued in this action. Rule 17(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held, * * *." Accordingly, since the Attorney General, whose official residence lies within this district, has been made a party defendant, as required by Tennessee law, supra, we hold that venue in Bennett v. Elliott properly lies in the Middle District of Tennessee.

## II

Although the identical issue of whether the equal population principle of Reynolds v. Sims applies to the quarterly court level of local government is raised by both complaints herein, the factual context of the alleged malapportionment in each is distinct.

In Hyden v. Baker, the plaintiffs, residents and qualified voters of Memphis and unincorporated areas in Shelby County, base their allegation of malapportionment on the readily apparent fact that the six incorporated towns in the

County, entitled to equal representation under T.C.A. § 19–101, are unequally populated. The following table, based on the 1960 United States Bureau of the Census statistics, illustrates the extent of this disparity:

|  |  | Population | Percentage |
|---|---|---|---|
| Incorporated Towns |  |  |  |
| Arlington | 620 |  |  |
| Bartlett | 508 |  |  |
| Collierville | 2,020 |  |  |
| Germantown | 1,104 |  |  |
| Millington | 6,059 |  |  |
|  | 10.311 | 10,311 | 1.64 |
| Memphis |  | 497,524 | 79.35 |
|  |  | 507,835 | 80.99 |
| Unincorporated Areas |  | 119,184 | 19.01 |
| Total |  | 627,019 | 100.00 |

Thus, the qualified voters residing in five incorporated towns containing approximately 1.64 percent of the population of Shelby County elect five of the six, or 83 percent, of the Justices of the Peace apportioned to incorporated towns under T.C.A. § 19–101 and five of eleven, or 46 percent, of the total membership of the Quarterly County Court.

In Bennett v. Elliott, plaintiffs contend that the representation accorded to the ninth civil district, of which they are residents and qualified voters, is not commensurate with its population. Although a precise determination of the population of this district cannot be made in terms of 1960 census figures, we believe that the figure of 43,875, or 68 percent of the total population of Washington County, is a reasonably close estimate.[11] Since the ninth civil district is substantially coextensive with Johnson City, it is inaccurate to focus only on the two Justices of the Peace elected on a civil district basis pursuant to T.C.A. § 19–102. In effect, the qualified voters of this district elect seven of the forty-three members of the Washington County Quarterly Court: two as residents of a civil district and five as residents of the incorporated town of Johnson City pursuant to T.C.A. § 19–101 and Chapter 421, Private Acts of 1919. Thus, the qualified voters of a civil district containing approximately 68 percent of the county's population elect 16 percent of the Justices of the Peace comprising the Quarterly Court of Washington County.

Both of the complaints herein assert that this gross population imbalance debases the votes of the respective plaintiffs and others similarly situated thereby depriving them of equal representation in violation of the Fourteenth Amendment as interpreted by Reynolds v. Sims. The defendants in each action admit the fact of imbalance but maintain that the Equal Protection Clause of the Fourteenth Amendment does not command that local elective governing bodies which perform essentially administrative functions and which have only limited legislative powers, if any, be elected from districts or constituencies apportioned on an equal population basis. Moody v. Flowers, 256 F.Supp. 195 (MD Ala.

11. The 1960 federal census, unlike that of 1950, does not fragment county population on a civil district basis but rather subdivides total county population on a "census division" basis. The 1960 "Johnson City" (31,187), "Johnson City North" (6,266), and "Johnson City Southeast" (6,422) census divisions are substantially equivalent in area to the ninth civil district and, accordingly, these were the components used to approximate the population of the latter.

1966), vacated and remanded, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Johnson v. Genesee County, 232 F.Supp. 567 (E.D.Mich.1964).

The actual holding of Reynolds v. Sims and its five companion cases [12] is that the "Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis." 377 U.S. at 568, 84 S.Ct. at 1385. Although some courts, focusing narrowly on this state legislative context, have held the equal population principle inapplicable to local representative bodies,[13] we do not believe that the fundamental principle underlying Reynolds v. Sims can be so limited:

> "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." (377 U.S. at 555, 84 S.Ct. at 1378)

The core of the *Reynolds* decision, therefore, is that any state legislative apportionment scheme resulting in a dilution of the efficacy of votes based on the residence of the voters constitutes invidious discrimination in violation of the Equal Protection Clause. When this rationale is considered in light of prior decisions holding that political subdivisions of the states are subject to the mandate of the Equal Protection Clause,[14] it is illogical to conclude that local elective bodies, such as quarterly county courts, are not encompassed within the constitutional doctrines established in *Reynolds* and related cases.

In Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), the Michigan statute in question provided for the election of the county school board by a body composed of a single delegate from each of the unequally populated school districts in the county. Mich.Stat.Ann. § 15.3294(1) (Supp.1965), C.L.1948, § 340.294a [P.A.1962, No. 190]. The Court upheld the Michigan plan reasoning that the equal population principle is inapplicable to local governing bodies selected by a fundamentally appointive process to perform essentially administrative functions. As we read this decision, it does not foreclose our determination that county governmental units which are elective and which perform essentially legislative functions come within the rationale of Reynolds v. Sims and, accordingly, must be apportioned on the basis of "one-man, one-vote."

That Tennessee quarterly courts are elective is not disputed. Defendants, however, do contend that these bodies are basically administrative, notwithstanding the declaration of the General Assembly that they are county "Legislative Bodies." T.C.A. § 5–528. The powers possessed by the quarterly courts are derivative in nature, that is, only such powers as are conferred expressly or by necessary implication by the General Assembly may be exercised. However, this limitation does not of itself require that we characterize the quarterly county court as an administrative body for "[i]n the exercise of the powers so conferred, they become miniature legisla-

---

12. Lucas v. Forty-Fourth General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed. 2d 620 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Maryland Comm. v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964).

13. Johnson v. Genesee County, supra; Simon v. Lafayette Parish Police Jury, 226 F.Supp. 301 (W.D.La.1964). Cf. Blaikie v. Wagner, 258 F.Supp. 364 (S.D. N.Y.1965); Lodico v. Board of Supervisors, 256 F.Supp. 440 (S.D.N.Y.1966).

14. Gomillion v. Lightfoot, 364 U.S. 339, 344–345, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); Cooper v. Aaron, 358 U.S. 1, 17, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).

tures, and the powers so exercised by them, whether they are called municipal or police, are in fact legislative powers." Redistricting Cases, 111 Tenn. 234, 257 (1903).

We note also that the arbitrary unilateral power formerly possessed by the General Assembly over the private and local affairs of counties was materially reduced by an amendment to the Tennessee Constitution proposed by the Limited Constitutional Convention of 1953 and ratified by vote of the people on November 3, 1953. This amendment to Article 11, § 9, of the Constitution provides that private or local acts of the General Assembly affecting a particular county, either in its governmental or its proprietary capacity, must, to become effective, be ratified either by a two-thirds vote of the Quarterly County Court of said county or by a majority of those voting in an election to be held in said county. The General Assembly was allowed to select the method of ratification to be required.

■ The powers granted to the quarterly courts include, *inter alia:* the levying of taxes and the appropriation of funds for general county purposes, Bayless v. Knox County, 199 Tenn. 268, 286 S.W.2d 579 (1955); authorizing the issuance of general revenue and tax deficiency bonds for the purpose of financing industrial development, Jack's Cookie Corp. v. Giles County, Tenn., 407 S.W.2d 446 (1966); and authorizing the erection of public buildings, T.C.A. § 5–523, and local improvements, T.C.A. § 5–521. Although we have doubts as to the accuracy of characterizing the powers possessed by local governing bodies in terms of a traditional legislative-administrative dichotomy, we are of the opinion that the powers possessed and the functions performed by Tennessee quarterly county courts are such as to require that these governmental units be elected on an equal population basis.

The plaintiffs herein have demonstrated that their votes and the votes of others similarly situated in electing the quarterly courts of their respective counties have been substantially diluted, that the basis for this dilution is their place of residence, and that such dilution constitutes invidious discrimination. The legal sources of this common discrimination are not identical. In Hyden v. Baker, the dilution arises from the policy expressed in the last sentence of Article VI, § 15, of the Tennessee Constitution and T.C.A. § 19–101 that incorporated towns are entitled to at least one Justice of the Peace regardless of population. In Bennett v. Elliott, on the other hand, the crux of the dilution is not the representation accorded to incorporated towns, but rather that Article VI, § 15, of the Tennessee Constitution and T.C.A. § 19–102 authorize equal representation for civil districts which are unequally populated.

■ Therefore, when these actions are considered together, it is evident that their combined thrust goes to the entire apportionment scheme of the quarterly county court level of local government, including by implication T.C.A. § 19–103 which provides for an additional Justice of the Peace for all civil districts wherein the county courthouse is physically located without regard to population. Defendants contend that the General Assembly by private act may redistrict counties and provide for supplementary representation for incorporated towns so as to bring the apportionment of each quarterly court throughout the State into conformity with the equal population principle. Upon consideration, we are of the opinion that the existence of a legislative power to implement an apportionment scheme which on its face is inconsistent with the equal population principle in a manner which is consistent therewith, is not a sufficient guarantee that the plaintiffs' right to equal representation will be protected.

As a practical matter it will be noted that, in Shelby County, the equalization

of the representation of the citizens of Bartlett and Memphis would require the allotment of almost one thousand Justices of the Peace to the latter.

We hold, therefore, that the apportionment provisions of Article VI, § 15, of the Constitution of Tennessee, T.C.A. §§ 19–101, 19–102 and 19–103 and those portions of Chapter 421, Private Acts of 1919, and of Chapter 522, Private Acts of 1935, as amended by Chapter 166, Private Acts of 1939, relating thereto and consistent therewith, as applied to the apportionment of the Quarterly County Courts of Shelby and Washington Counties, are void as violative of rights secured by the Equal Protection Clause of the Fourteenth Amendment.

As was also true in Strickland v. Burns, supra, determining the appropriate relief to effectuate this decision has given this court much concern. We are still of the belief that devising a constitutionally acceptable method of apportioning representation on these local governmental units is more properly a legislative function than a judicial one. Accordingly, injunctive relief will not be ordered at this time. The General Assembly of Tennessee has just convened and it may well deal with this matter. Pending adjournment of the General Assembly jurisdiction will be retained, and, after such adjournment, the court will further consider the question of relief, if necessary.

Counsel will submit an appropriate order within ten (10) days.

WILLIAM E. MILLER, District Judge (concurring):

I concur in the conclusions of Judge Gray on all issues.

To deny the application of the "one man, one vote" principle to subordinate bodies possessing important legislative functions would be to ignore the reason underlying the principle, i. e., the protection of voting rights against invidious discrimination brought about by state action. Indeed, in many respects the right to vote for members of a local governing body accorded by state law, (such as a quarterly county court under the Tennessee system) may be just as valuable as the right to vote for members of the state legislative assembly. I am unable to find any valid reason why the state should be prohibited from debasing the right to vote for members of a state legislature and yet be free to debase the right to vote for members of agencies as important in our system as the county governing bodies. To be sure, most of the powers of county courts in Tennessee are conferred by state law and are subject to withdrawal and modification at the will of the General Assembly. To me this is of no consequence here. The crucial and determinative considerations are that they are in fact vested with important legislative functions and their membership is determined by popular vote under state law. To deny such voting rights the Fourteenth Amendment's protection against discriminatory treatment would be in my view an abdication of judicial responsibility.

PHILLIPS, Circuit Judge (dissenting).

I find no invidious discrimination in a statute which permits the voters of each incorporated town in a county to elect a member of the county governing body, which in Tennessee is the Quarterly County Court. Nor do I see any invidious discrimination in Article 6, § 15 of the Constitution of Tennessee which provides that: "The Legislature shall have power to provide for the appointment of an additional number of Justices of the Peace in incorporated towns."

In the absence of invidious discrimination there is no violation of the Equal Protection Clause of the Fourteenth Amendment. Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656.

In Reynolds v. Sims, 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, the Supreme Court said:

"Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions. As stated by the Court in Hunter v. City of Pittsburgh, 207 U.S. 161, 178, 28 S.Ct. 40, 52 L.Ed. 151, these governmental units are 'created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them,' and the 'number, nature and duration of the powers conferred upon [them] * * * and the territory over which they shall be exercised rests in the absolute discretion of the state.' "

This language was quoted by the Court in Sailors v. Board of Education, 387 U.S. 105 at 107–108, 87 S.Ct. 1549, 18 L.Ed.2d 650. In the same case the Court said: "Save and unless the state, county, or municipal government runs afoul of a federally protected right, it has vast leeway in the management of its internal affairs." 387 U.S. at 109, 87 S.Ct. at 1553. "Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation." 387 U.S. at 110–111, 87 S.Ct. at 1553.

The three statutes of state-wide application involved in the present case, T.C.A. §§ 19–101, 19–102, and 19–103, are based upon experimentation combined with long experience. They have been in force for more than a century. These same code sections were a part of the Code of 1858, Tennessee's first official code, and originated with statutes enacted at various legislative sessions between 1835 and 1856.

This is not a case in which Tennessee has manipulated "its political subdivisions so as to defeat a federally protected right, as for example, by realigning political subdivisions so as to deny a person his vote because of race. Gomillion v. Lightfoot, 364 U.S. 339, 345, 81 S.Ct. 125, 129, 5 L.Ed.2d 110." Sailors v. Board of Education, supra, 387 U.S. at 108–109, 87 S.Ct. at 1552. The framers of the State constitution concluded that the Legislature should have the power to authorize the selection of Justices of the Peace to represent incorporated towns as members of Quarterly County Courts. The Legislature exercised this power by enacting a general statute to the effect that the voters of each incorporated town, regardless of population, are entitled to elect one member of the Quarterly County Court.

Many problems of local government are of concern both to incorporated municipalities and the counties in which they are located. This is true regardless of the population of the municipalities. Incorporated towns and cities both large and small have a community of interests with their county government. Cooperation between municipal and county governments can inure to the public benefit, while friction and duplication of effort can be detrimental to the public interest. For more than a century Tennessee has recognized that its incorporated towns and cities have an important stake in the county government and are entitled to representation by election of Justices of the Peace or magistrates to serve as members of the Quarterly County Court.

As a matter of mathematical practicality representation of incorporated municipalities on county governing boards cannot be accomplished on a "one man, one vote" basis. As pointed out in the majority opinion, application of the "one man, one vote" rule to the towns and cities of Shelby County would require the allotment of almost one thousand Justices of the Peace to the City of Memphis. An examination of the population of the cities and towns of Tennessee under the

Federal Census of 1960 demonstrates the mathematical impossibility of providing representation of incorporated municipalities on Quarterly County Courts on a "one man, one vote" formula.

In the absence of invidious discrimination, I view the apportionment of municipal representation on Quarterly County Courts as a legislative and not a judicial prerogative. Following the decision of the Supreme Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, the Tennessee Legislature has been reapportioned on a constitutional basis. Baker v. Carr, 247 F.Supp. 629 (M.D.Tenn.). Shelby County, one of the two counties involved in the present litigation, has the largest legislative delegation of any county in the State, consisting of six State Senators out of thirty-three and sixteen Representatives out of ninety-nine. Washington County has two Representatives elected from that county alone and contains the majority of the voters in the senatorial district of which it is a part.

It is to be emphasized that the Legislature is empowered by Article 6, § 15 of the State Constitution to provide more than one Justice of the Peace from an incorporate town. For example, under the terms of a private Act of the Legislature, Johnson City, the largest town in Washington County, elects five Justices of the Peace to the Quarterly County Court rather than one as provided by T.C.A. § 19–101. These five Justices are in addition to the two elected from the Civil District in which Johnson City is located. Thus, the Legislature, which now is a constitutionally apportioned body, has the power to alleviate any problems of malapportionment it may find in election of members of Quarterly County Courts. In my opinion the number of Justices of the Peace to be elected from each incorporated town is a matter which should be resolved by the Legislature and not by the courts.

In my opinion the destruction of the right of a city to elect a representative to serve on the Quarterly County Court

of the county in order to apply the "one man, one vote" rule places entirely too much emphasis upon mathematics and fractions. The provision that the voters of each incorporated municipality shall elect an additional Justice of the Peace constitutes legislative recognition that with respect to representation on the Quarterly County Court municipalities have special interests which are distinct from the interests of individual voters.

For the reasons stated with respect to T.C.A. § 19–101, I would hold that there is nothing unconstitutional per se in T.C.A. § 19–103, which provides for the election of three Justices of the Peace from the civil district in which the county seat is located.

In my dissenting opinion in Strickland v. Burns, 256 F.Supp. 824, 836 (M.D. Tenn.), I expressed the view that the "one man, one vote" rule does not apply to a county school commission which is a local administrative agency possessing no legislative powers.

The Supreme Court has not yet applied Reynolds v. Sims, supra, 377 U.S. 533, 84 S.Ct. 1362, 72 L.Ed.2d 506, to local arms and instrumentalities of the State government, whether possessing legislative powers or only administrative powers. In Sailors v. Board of Education, supra, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650, and Dusch v. Davis, supra, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656, the comments of the Court on this subject were predicated on the assumption *arguendo* that the requirements of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, must be applied to local governments. I interpret these decisions as reserving judgment on this issue.

There can be no doubt that, although Quarterly County Courts possess limited legislative powers delegated by the Legislature, the counties of Tennessee are nothing more than arms and agencies of the State. Bayless v. Knox County, 199 Tenn. 268, 287, 286 S.W.2d 579, 588;

Henderson County v. Wallace, 173 Tenn. 184, 189, 116 S.W.2d 1003, 1005.

In Cunningham v. Broadbent, 177 Tenn. 202, 207, 147 S.W.2d 408, 410, the Supreme Court of Tennessee said:

"The County is a subdivision and arm of the State, and the parties were dealing with governmental purposes and objects. Neither the Constitution of Tennessee, nor of the United States, imposes any restraint upon legislation affecting the contractual relations between the State and its political subdivisions, entered into in their governmental capacities and dealing with governmental functions. In such functions the County has no rights which the Legislature may not subsequently modify or abrogate. City of Trenton v. New Jersey, 262 U.S. 182 [43 S.Ct., 534], 67 L.Ed. 937, 29 A.L.R. 1471; City of Memphis v. Memphis Water Co., 52 Tenn. 495, 5 Heisk. 495; State ex rel. Bell v. Cummings, 130 Tenn. 566 [172 S.W., 290, L.R.A. 1915D, 274]; Robertson v. Town of Englewood, 174 Tenn. 92 [123 S.W.2d, 1090]."

Pending a decision by the Supreme Court as to whether Reynolds v. Sims, supra, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, is to be applied to local governments, and, if so, to what extent, I express no opinion as to the constitutionality of T.C.A. § 19–102 or of the private statutes affecting Shelby and Washington Counties involved in this case, as applied to civil districts of malapportioned population in a given county.

I agree with the majority opinion that a three-judge court was properly convened, since an attack is made upon State statutes and a provision of the Constitution of Tennessee applicable to all counties of the State having the Quarterly County Court form of government. Sailors v. Board of Education, supra, 387 U.S. 105, 107, 87 S.Ct. 1549, 18 L.Ed.2d 650.

Further, I concur with the majority opinion that the class represented is limited to the qualified voters of Shelby and Washington Counties, respectively, and that plaintiffs are not entitled to maintain a class action on behalf of citizens of other counties of Tennessee.

I would dismiss the complaints in both cases.