Rev. William SEALS et al., Plaintiffs-Appellants,

v.

The QUARTERLY COUNTY COURT OF MADISON COUNTY, TENNESSEE, et al., Defendants-Appellees.

No. 73–1673.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1974.

Decided April 23, 1974.

PHILLIPS, Chief Judge.

This action was filed by a group of black citizens of Madison County, Tennessee, attacking a plan providing for election from the county at large of all members of the county's governing body, known in Tennessee as the Quarterly County Court.

Approximately 30 per cent of the population of Madison County is black. Plaintiffs assert that the equal protection and voting rights of black citizens guaranteed by the Fourteenth and Fifteenth Amendments are violated because the county-wide plan minimizes and cancels out the voting strength of black citizens, denies them effective representation on the Quarterly County Court and discourages them from voting.

Relying upon Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971), the District Court held that plaintiffs had failed to carry their burden of showing any constitutional infirmity in the plan. However, the District Court retained the case until six months after the next Quarterly County Court election. Thereafter the action was dismissed with this recitation: "The Court has not heard from any of the parties concerning the matters involved in this cause, nor have we been otherwise apprised of any reason for keeping this file open." Plaintiffs then filed a motion to reopen the case, which was overruled.

Under Tennessee's local government structure, the county legislative body is the Quarterly County Court. This court is composed of magistrates, also known as justices of the peace. Although the judicial functions formerly exercised by justices of the peace now are vested in the local Courts of General Sessions, the members of the Quarterly Court continue to perform many important functions of local government. In The Redistricting Cases, 111 Tenn. 234, 253, 80 S.W. 750 (1903), the Supreme Court of Tennessee said: "It is quite impossible . . . to speak intelligently of our county organizations without bringing

William E. Caldwell, Memphis, Tenn., for plaintiffs-appellants; Ratner, Sugarmon & Lucas, Memphis, Tenn., Nathaniel R. Jones, New York City, on brief.

Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and WEICK and MILLER, Circuit Judges.

into view the county court, the chief organ in the expression of its political, judicial and municipal life." In the same opinion the court quoted with approval an earlier decision describing Quarterly County Courts as "miniature legislatures." 111 Tenn. at 257, 80 S.W. 750.

Traditionally in Tennessee the magistrates constituting the Quarterly County Court have been elected from the civil districts and not from the county at large. Article VI, § 15 of the 1870 Constitution of Tennessee provides that "[t]here shall be two Justices of the Peace and one constable elected in each district, by the qualified voters . . . ." A similar provision was contained in the Constitution of 1834. This traditional method of election by civil districts was followed in Madison County prior to the time the plan now under attack was adopted by resolution of the Quarterly County Court in 1968.

Under the 1968 resolution the county was redistricted into thirteen county districts, the boundaries of each district, for the purpose of voting, being the same as the boundaries of Madison County. As thus reapportioned, the Quarterly County Court consists of 27 members, one from each of the ten civil districts, 13 from the City of Jackson and four from the county at large. All candidates, even though seeking to represent a particular district or the City of Jackson, must make their races before the voters of the entire county.

Appellants complain that a black candidate, residing in a district that is predominately black, must seek election in a county-wide race where the blacks comprise only 30 per cent of the population.

The county contends that the 1968 plan was not adopted for racial motives, but only for the purpose of redistricting the county in accordance with the requirements of the "one-man, one-vote"

principle. Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Hyden v. Baker, 286 F.Supp. 475 (M.D. Tenn.1968) (three-judge court). Pursuant to these decisions, the Tennessee Legislature enacted a statute requiring the Quarterly County Courts to reapportion themselves to meet the "one-man, one-vote" principle. Public Acts of 1968, ch. 599.

The District Court said: "While there is no direct evidence that racial considerations were significant in the end result, we must look to other indicia. . . ." This court agrees that the question of the validity of the reapportionment plan must be determined by the end results and practical workings of the at-large system of voting, even if the sponsors of the plan had no racial motives in adopting it.

Among the findings of fact made by the District Court are the following:

"Approximately 30% of the population of Madison County is black according to the 1970 census.[1] In April of 1969, 21,829 whites had registered to vote, and only 6,446 blacks were so registered, less than 23%, and figures indicated that the proportion of black registered voters in the City of Jackson varied little from those in, the County.[2] At this same time, more than 63% of the Madison County registered voters came from the City of Jackson.[3] In February of 1967, prior to the reapportionment in question, more than 25% of the registered voters of Madison County were black, and about the same proportion existed in 1965.

"It was conceded at the hearing that there were none of the 31 county magistrates elected prior to 1968 who were black, and all 27 of the magistrates elected under the apportionment plan in question, voted on by all the Madison County

---

1. 20,838 black, 44,760 white, but fewer of the blacks were of voting age.

2. Approximately one-third of the population of the City of Jackson in 1970 was black.

3. In 1967, prior to reapportionment, nearly ⅔ of Madison County's registered voters lived in Jackson.

voters were white. In November, 1968 special election there were 6 black candidates running from 5 different county districts out of a total of 82 candidates running from 10 civil districts and 13 county districts. The low vote for a successful white candidate (John P. Petty—County District 11) was 3,338 votes, whereas the high vote among the unsuccessful black candidates was 2,614 (Ausie Brooks running from County District 8—the City of Jackson). Had ⅔ of the Madison County registered blacks voted for Leon Batchelor, a black, in County District 13 in that election, he would have been elected without obtaining a single white vote.[4] Savannah Williamson, the only black, ran 5th out of a field of 8 candidates from County District 12.[5]

"The plaintiffs produced evidence showing that all county officials elected by the Quarterly County Court were white (except for Notaries Public) including all five Road and Workhouse Commissioners, but all elected county officials including Sheriff, Trustee, Register and 9 Constables were also white. The County Court appoints a number of important board and commission members in conjunction with its duties and responsibilities as the 'legislative body' for Madison County. (See Chapter 5, Title 5, T.C.A. § 5–501 et seq.)

\* \* \* \* \* \*

"Only one black has been appointed by the County Quarterly Court to any of a number of important committees or commissions, one black out of 7 members of the County Board of Education. No blacks have been appointed by the County Court to the County Library Board, the Board of Zoning Appeals, the Beer Commission, the County Agriculture Committee or Road Commission or General Hospital Committee, among others. It is therefore no wonder that black plaintiffs have alleged in this complaint that the County Court and their elected Chairman, the County Judge, are and have been insensitive to and are comparatively unconcerned about black problems, needs, and aspirations.

"The history of Madison County, like virtually all other West Tennessee counties, has been a history of segregation prior to the mid-1950's, and unquestionably there has been overt racial discrimination in many aspects of life, in both the public and private areas, for most of Madison County's 150 year history, or at least until very recent years. For 100 years perhaps no black has been elected to a public office in Madison County, though it should be pointed out that the newly elected Mayor of Jackson apparently has appointed a number of blacks to positions of responsibility in City affairs on several City boards and agencies.[6] The County Court and the County School Boards over many years have fought efforts to desegregate its public schools. Monroe, et al. v. Board of Commissioners of the City of Jackson, Tennessee, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733, 427 F.2d 1005; 380 F.2d 955; 244 F.Supp. 353 and 221 F.Supp. 958.

"Plaintiff Merry, past local N.A.A.C.P. President, ran unsuccessfully for the state legislature, a 'single member district' situation in 1964 and other prominent blacks ran unsuccessfully for the County Court in 1966, when candidates apparently were elected from and ran as members from separate civil districts rather than on a County-wide basis.[7]

\* \* \* \* \* \*

"It appears to us that there is no question, but that if there were single member district voting blacks in Madi-

---

4. The breakdown of election results shows that black candidates in the 1968 election received votes from every voting box indicating that a substantial number of whites voted for black candidates.

5. Had Williamson received 73% of the registered black vote, he would have prevailed even without any white vote.

6. The County Highway Commission, on the other hand, has hired only one black out of a total of more than 75 employees and that only after suit was instituted.

7. Williamson, for example, lost in a four man race for County Court in 1956 against three white opponents.

son County would have a much better chance to elect a black or blacks on the County Court. This was, of course, the experience in nearby City of Memphis and in Shelby County, Tennessee, when municipal and county governmental elections were fashioned in the 1960's on the basis of single member district voting. The 'minority' Republican Party in Shelby County also experienced like success in electing Republican state representatives and senators from single member districts rather than on an 'at large' basis in the early 1960's.

"It appears that white magistrates both prior to and after the 1968 reapportionment did make contact with and seek support of black leaders and voters in campaigns for the Madison County Quarterly Court. It is likewise true that in some areas of black concern and in the matter of making appointments, however, blacks have received little recognition from that body.

\* \* \* \* \* \*

"In view of the record before us (1) that Negroes have not registered in proportion to their eligibility together with no showing of present efforts to discourage their registration in Madison County, (2) that black candidates under the reapportionment plan in question have fared no worse than the others under the previous arrangement, now sought by plaintiffs, (3) that blacks have not necessarily overwhelmingly voted for black candidates in Madison County even when presented the opportunity (nor whites exclusively for whites), (4) that white county court candidates and magistrates have continued to seek support of black voters and have at long last recently made at least a beginning towards better attention to black problems and interests, (5) blacks, though registered, have apparently not been particularly in-

terested or motivated to vote in county court elections, even for leaders among the black community (though in this respect neither have white registered voters) and (6) there was no great protest by black leadership against the adoption of the reapportionment plan in question at the time it was adopted. We find that plaintiffs have not carried their burden of showing constitutional infirmity in the present plan.

"Experience under the plan has 'not yet demonstrated that multi-member districts are inherently invidious and violative of the Fourteenth Amendment.' Whitcomb v. Chavis, *supra*, p. 160, 91 S.Ct. 1858, 29 L.Ed.2d 363. Nor under these circumstances do we find any present violation of the Fifteenth Amendment."

The order of the Supreme Court in City of Petersburg, Virginia v. United States, 410 U.S. 962, 93 S.Ct. 1441, 35 L.Ed.2d 698 (1973), aff'g, 354 F.Supp. 1021 (D.C.D.C.1972), had not been announced at the time of the District Court's original decision in this case. Nor was the decision of the Supreme Court in White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), available at the time the District Court denied the motion to reopen. This court concludes that, rather than passing on the issues raised by the present appeal, we should remand the case to the District Court for further consideration in light of these decisions.

The order of the District Court dismissing this case is vacated. The case is remanded to the District Court for further consideration in light of White v. Regester and City of Petersburg v. United States.

Vacated and remanded. The costs of this appeal are assessed against Madison County.